[Sac. No. 854. Department One.—January 31, 1901.]

In the Matter of the Estate of T. N. BENTON, Deceased. ELIZABETH BENTON, Contestant of Will, Respondent, v. H. A. BENTON et al., Proponents of Will, Appellants.

Estates of Deceased Persons—Contest of Will—Right of Heir—Beneficial Interest.—An heir at law of a deceased person may contest a will offered for probate without any other showing of beneficial interest than such heirship, although the will may provide for the contestant a larger share of the estate than would be received as an heir at law.

Id.—Trial of Contest—Submission of Issues—Questions for Jury—Ultimate Facts.—Upon the trial by jury of a contest of the probate of a will, the proper procedure and the best practice in submitting the issues to the jury is to submit with proper instructions questions as to the ultimate facts involved in the issues, such as whether the deceased was competent to make a will and whether at the time of its execution he was free from fraud practiced upon him by the person charged therewith.

Id.—Effect of Verdict—Probate of Will.—If the verdict of the jury condemns the will upon either of the ultimate facts charged as grounds of contest, its probate must be rejected. If it supports the will, the court should take evidence upon matters not involved in the contest, and upon the joint findings of the jury and of the court in favor of the will, it must be admitted to probate.

Id.—Submission of Questions as to Probative Facts.—The submission of questions to the jury as to probative facts, in addition to the ultimate facts, is allowable, but is not necessary.

Id.—Findings Upon Probative Facts Only—Legal Conclusion as to Ultimate Fact.—Where the ultimate fact upon any issue involved in the contest is not submitted to the jury, and only probative facts are submitted and found, the ultimate fact cannot be considered as established, unless it necessarily results as a legal conclusion from the probative facts found.

Id.—Inference of Fact not Permissible—Rejection of Probate.—The court must not make any inference of fact from the probative facts found by the jury, in order to support the judgment which it renders; and in order to justify the rejection of the probate of the will upon probative facts found, it must be able to declare as matter of law from those facts that the judgment must be one rejecting the probate.

Id.—Insufficient Findings as to Fraud—Fraudulent Intent not Shown.—Findings merely of probative facts bearing upon the ques-

tion of actual fraud, charged upon a proponent of the will,. do not legally show a case of actual fraud as defined by section 1527 of the Civil Code, where there is no finding that there was any intent of the proponent to deceive the testator, or to induce him to make the will, or that false representations made by him which controlled the action of the testator were known by him to be false, or were not believed by him to be true. Such findings cannot justify a denial of the probate of the will on the ground of fraud.

ID.—CONTROL OF TESTATOR—FALSE REPRESENTATIONS HONESTLY MADE.— It is not fraudulent to seek to control a testator in making a will, with proper purpose and effect; and if false representations are honestly made, with a belief that they are true, and with good motives, they are not fraudulent, nor would the will in this respect be executed by reason of any fraudulent representation.

ID.—ALTERNATIVE FINDING.—A finding that representations were false or fraudulent is not a finding of fact upon either alternative, and amounts to nothing.

ID.—REPRESENTATIONS,NOT SHOWN TO BE EFFECTIVE.—Findings as to representations not shown to have been made prior to the execution of the will, or as to representations which could have had no effect upon the mind of the testator, or which are not shown to have been believed or acted upon by him, are not indicative of fraud.

ID.—FRAUD IN EXECUTION OF WILL—IMMATERIAL FINDING—MATERIAL OMISSION TO FIND.—A finding that no fraud or misrepresentation was practiced by any person at the very time the testator signed the will and codicil is immaterial on the issue of fraud, and is not equivalent to a declaration that the proponent was not guilty of fraud practiced upon the testator in the execution of the will; and where there is no direct finding upon that subject matter, the omission is material, and a judgment rejecting the probate of the will must be reversed.

ID.—EVIDENCE—DIVORCE SUIT—TESTIMONY OF TESTATOR—REPORTER'S COPY.—A reporter's copy of the testimony given by the testator in an action for divorce is not admissible upon the contest of the probate of his will. Its admissibility is not justified by section 275 of the Code of Civil Procedure.

ID.—DECLARATIONS OF TESTATOR—TESTIMONY OF REPORTER—REFRESHMENT OF MEMORY.—If the declarations of the testator made in the divorce suit were for any reason competent and admissible, they must be proved as declarations, by oral testimony of the reporter who heard them, who could refresh his memory from his notes taken at the time.

ID.—KINDNESS OF CONTESTANT TO PROPONENT'S FAMILY.—Evidence as to the kindness of the contestant shown to the family of the proponent is irrelevant and inadmissible.

ID.—IMMATERIAL DOCUMENTARY EVIDENCE.—A ¦deed of trust executed
    by the testator, and a lease made by him to the proponent are
    immaterial, and not admissible evidence for the contestant.

APPEAL from a judgment of the Superior Court of San
Joaquin County.   Edward I. Jones, Judge.

The facts are stated in the opinion of the court.

J. G. Swinnerton, and J. J. Fitzgerald, for Appellants.

Nicol, Orr & Nutter, and Budd & Thompson, for Respond-
ent.

GAROUTTE, J.—The wife is contesting the probate of the
will of her deceased husband, Tolman N. Benton.   The propo-
nent of the will is Herbert A. Benton, a son by a previous wife.
At the trial before a jury, the issues were limited to incom-
petency, and also fraud practiced upon the deceased by the
proponent of the will in the making thereof.   Fifty questions
purporting to bear upon the issues raised were submitted to
the jury, and answers returned thereto.   Upon the strength of
these answers the will was denied probate, and this appeal is
taken from that judgment upon a bill of exceptions.

It is first asserted that the petition of contestant is sub-
stantially insufficient in not showing that she is beneficially
interested in defeating the probate of the will.   It is only
necessary to say that she shows herself to be an heir at law
of decedent, and that fact gives her the right of contest.   As
bearing upon this right, it is immaterial that the will at-
tacked possibly gives her a larger share of the estate than she
would take as an heir at law.

There appears to be some doubt in the minds of counsel in
this case, and also in the mind of the trial court, as to the
character of the issues which may or should be presented to
the jury in a case of this kind.   Yet in view of the provisions
of sections 1312 and 1314 of the Code of Civil Procedure, we
see no reason for doubt as to the proper procedure to be fol-
lowed; as, for example, in this case, counsel and court may have
submitted to the jury the question: 1. Was the decedent com-
petent to make a last will and testament?   2. Was the mind·

of the decedent, at the time of the execution of the will, free
from fraud practiced upon him by Herbert A. Benton? These
were the ultimate facts in the case. A negative finding by the
jury upon either of them would have required a denial of the
will to probate. While counsel could, in addition to the ulti-
mate facts, submit issues bearing specifically upon certain
branches of the evidence, yet that course is not at all neces-
sary; and in many instances the submission of the ultimate fact
to the jury for a finding, when accompanied by clear and ex-
plicit instructions as to the law which should govern the jurors
in applying the evidence and arriving at a verdict, is the bet-
ter practice to pursue. If the verdict of the jury condemns
the will, a judgment rejecting its probate necessarily follows.
If the verdict supports the will, then the court should take
evidence upon the matters not involved in the contest, and
thereupon, by virtue of the facts declared by the verdict con-
jointly with those found by the court, adjudge that the docu-
ment be admitted to probate.

We here have the question presented, Do the issues deter-
mined by the jury justify the judgment made by the court,
rejecting the probate of the will? The issue as to the com-
petency of the decedent was found in favor of proponent; and
the issue of fraud is the single one remaining. The findings
of the jury upon the issues submitted to them stand the same
as the findings of fact made by the court in a civil action,
that is, when we are brought to the consideration of their
sufficiency to support the judgment rendered. In the one case
the jury makes the findings, and in the other the court makes
them; and as said in *Bull v. Bray*, 89 Cal. 286, quoting from
the syllabus: "Where probative facts only are found, yet if
the ultimate fact flows as a necessary conclusion therefrom, the
findings are sufficient; but in order to warrant the appellate
court in inferring an ultimate fact from probative facts, it
must inevitably follow from the facts found." So in a case
where the probate of a will is contested, if the issues presented
to the jury involve simply probative facts, then, to justify
the court in rejecting the probate of the will, the ultimate
fact of fraud, undue influence, or mental incompetency must

appear conclusively from the probative facts found. In other words, the trial court may not indulge in inferences of fact in order to support the judgment it makes. It must weigh and test the facts alone that are presented to it by the jury. Presumptions of law may. be indulged in, but the indulgence in inferences of fact as to matters bearing upon the issues presented to the jury are denied to it. The trial court must be able to say, "As matter of law from the facts found by the jury the judgment in this case must be one rejecting the probate of this will." If an ultimate fact of fraud, or mental incompetency, or undue influence, be found by the jury, then the court is bound to declare that a certain particular judgment follows as matter of law. So must the court be able to declare from the probative facts found. It is said in the case of *In re Sanderson*, 74 Cal. 208: "In cases of contest of a will the issues must be such as that the determination of them will leave to the court no office except to enter a judgment admitting the will to probate or rejecting it." The court is here speaking alone of the issues involving the ultimate facts alleged and denied by the pleadings.

We pass to a consideration of the issues found upon by the jury, and discussed by counsel in their briefs.

"Q. Was Tolman N. Benton, at the time of and in the making of the two papers in contest, actuated and controlled solely, by representations to him at any time made by Herbert A. Benton, and were such representations false or fraudulent? A. Yes."

Then follow many questions and answers, of which the following are a fair illustration:

"1. Did Herbert A. Benton at any time represent to Tolman N. Benton that the contestant, Elizabeth Benton, was stealing from him, said Tolman N. Benton? A. Yes.

"2. Did Herbert A. Benton at any time represent to Tolman N. Benton that contestant, Elizabeth N. Benton, was making use of the property of Tolman N. Benton for the benefit of others? A. Yes."

We then have questions and answers of which the following are fair illustrations:

"1. Did Herbert A. Benton, by any false or fraudulent statement, ever cause Tolman N. Benton to accuse contestant of theft?  A.  Yes.

"2. Did Herbert A. Benton, by any fraudulent or false statements, induce or persuade Tolman N. Benton to apply to contestant any vile names or opprobrious epithets?  A.  Yes."

We then have the following questions and answers:

"1. Did Tolman N. Benton at all times know that contestant had been at all times to him, said Tolman N. Benton, a dutiful wife?  A.  Yes.

"2. Did Tolman N. Benton at all times know that contestant had never at any time given him, said Thomas N. Benton, any cause to act toward her or treat her in any manner other than in kindness?  A.  Yes."

We also have these questions and answers:

"1. Did Herbert A. Benton ever make any statements or representations to Tolman N. Benton about contestant, which he, said Herbert A. Benton knew to be false.  A.  Yes.

"2. Did Tolman N. Benton ever make any will solely by reason of any false representations made to him, Tolman N. Benton, by Herbert A. Benton?  A.  Yes.

"3. Was any fraud or misrepresentation practiced by any person on Tolman N. Benton at the very time he signed the paper purporting to be a will and dated October 9, 1896?  A. No."

That which will vitiate a contract will vitiate a will (*In re Kohler*, 79 Cal. 313); and section 1572 of the Civil Code provides: "Actual fraud within the meaning of this chapter consists in any of the following acts, committed by a party to a contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract: 1. The suggestion as a fact of that which is not true, by one who does not believe it to be true." Tried in the crucible furnished by this section, do the facts found by the jury establish that the proponent of this will was guilty of fraud practiced upon decedent in the making thereof? Upon a careful consideration of those facts we have become entirely convinced that

they do not constitute a fraud which vitiates the will of decedent.

The most important finding of the jury is the one first quoted. Yet it falls far short of showing a case of actual fraud, within the meaning of the aforesaid section of the Civil Code. It is, in substance, a finding that the deceased executed the will and codicil, actuated and controlled solely by representations made to him by Herbert A. Benton, and that these representations were false or fraudulent. In this statement of facts the all-important element is lacking, to wit: That Herbert A. Benton made these representations with intent to deceive the decedent, or with intent to induce decedent to execute his will. An intent to do one of these things is always an element and a necessary element in any given state of facts, in order that those facts may constitute actual fraud. This particular intent is the leaven which permeates the whole, and gives it the name of fraud. Again, there is no finding that these representations were known by Herbert A. Benton to be false, or that he did not believe them to be true. These also are elements necessary to a showing of actual fraud. Again, the finding is that the representations were false *or* fraudulent. As a finding of fact, that is neither one thing nor the other. Perchance these representations were all fraudulent only. The word "fraudulent," as here used, has no well-defined legal meaning, and this part of the finding as to the representations being false or fraudulent amounts to nothing. This answer by the jury is consistent with a finding by it that, although the testator in making the will was actuated and controlled by the representations of Herbert A. Benton, and that these representations were false, yet that Herbert A. Benton believed them to be true and made them with the best of motives. It would not be fraudulent for him to seek to control the testator in making his will so long as his purpose and the effect thereof was proper, and if he believed that the representations he made were true, his conduct would not be fraudulent, nor would the will, in this respect, be executed by reason of any fraudulent representation.

We next have findings as to the representations made by Herbert A. Benton to decedent. These representations do not ap-

pear to have any connection with or relation to the representations referred to in the previous finding; and even if by inference or conjecture it might be held that they were the same representations, still there is no finding that they were false, or that they were made with intent to deceive the deceased or induce him to execute his will. Neither is there any finding that these representations were made prior to the execution of the will.

As to the finding that Herbert A. Benton by false or fraudulent statements caused Tolman N. Benton to accuse contestant of theft, and others of like character, we see no importance whatever in them as casting light upon the question of fraud. Standing alone, they wholly fail to indicate the practice of an actual fraud, and when joined to the other findings they fail to add any strength to them. The next findings to the effect that Tolman N. Benton at all times knew that contestant was a dutiful wife, and lived up strictly to her marital relations, etc., only serve the purpose of showing that Herbert A. Benton's representations to deceased, tending to the contrary, had no effect upon decedent's mind.

As to the finding that Herbert A. Benton made statements to his father about contestant, which he (Herbert), knew to be false, there is no finding that he made these statements with intent to deceive his father, or to induce him to make his will; neither is there a finding that the father believed these statements or acted upon them. It does not even appear that they were made prior to the execution of the will. While the next finding declares that Tolman N. Benton made a will by reason of false representations made to him by Herbert A. Benton, there is no finding that these representations were known by Herbert to be false when made. Again, it is left as a pure matter of conjecture that the words "a will" refers to the will and codicil here under consideration. We do not attach any special importance to the findings declaring that no fraud or misrepresentation was practiced by any person on Tolman N. Benton "at the very time" he signed the will and codicil. Any particular moment of time is a matter wholly immaterial to the issue of fraud.

We are led to the conclusion that the findings of fact returned by the jury do not establish a case of fraud in the execution of the will and codicil here involved. While the petition of contestant charges fraud, for various reasons not apparent to the court, the question was not directly presented to the jury, in the issues upon which they were required to return a verdict. But, upon the other hand, we find no declaration of the jury that the proponent was not guilty of the practice of fraud upon the decedent in the execution of the will. While we have findings indicating that at the "very time" Tolman N. Benton signed the will and codicil the proponent practiced no fraud upon him, still this finding falls far short of a finding that the making of the will was not had under the influence of proponent's fraud. The case then presents itself exactly as a case where there is no finding of fact upon a material issue, and the judgment must be reversed for that reason.

The official reporter identified a certain document as a certified copy of the testimony of Tolman N. Benton, given by him in an action for divorce tried some years prior thereto. We know of no section of the code that justifies the admission of this character of evidence. Section 273 of the Code of Civil Procedure is relied upon to effect that purpose, but it does not go to that extent. The evidence here sought to be introduced stood simply as the declaration of Tolman N. Benton; and if his declarations were competent and admissible evidence, they could have been placed before the jury by oral testimony of the reporter who heard them; and his recollection as to the testimony may have been refreshed from his notes taken at the time. (Code Civ. Proc., sec. 2047; *People v. Gardner*, 98 Cal. 127, 132.) The said section 273 refers to reports of the official reporter required to be filed in the court. This question is discussed in *Reid v. Reid*, 73 Cal. 208, and it was there declared: "The unfiled transcript is certainly not a public record, but must be put upon the footing of a private memorandum. . . . . We think, therefore that section 273 does not make the transcript itself admissible in evidence."

The court is convinced that all of the testimony tending to the point that contestant was kind to proponent's family,

waited upon them, etc., is foreign to any question involved in the issues upon trial. The court is also satisfied that the deed of trust given by Tolman N. Benton was likewise immaterial as evidence. The lease given by the father to proponent also stands upon the same footing. The court is well satisfied that the questions here discussed may be considered upon a bill of exceptions taken upon appeal from the judgment. The court is also convinced that the demurrer to the petition of contestant was properly overruled.

For the foregoing reasons the judgment is reversed and the cause remanded.

Harrison, J., and Van Dyke, J., concurred.

———

[S. F. No. 1604. Department One.—January 29, 1901.]

FLINN & TREACY, Respondents, v. ELLEN M. MOWRY, Appellant.

CONTRACT FOR STREET WORK—SEPARATE INSTRUMENTS—PARTS OF ONE TRANSACTION — PAYMENT IN INSTALLMENTS. — Where a property owner signed an inchoate private contract for street work, which needed other signatures to obtain a permit therefor, and which fixed a price per yard for paving, to be paid upon completion of the work, and the contractor at the same time signed an instrument receipting for a difference in price agreed upon between them, and providing that a specified balance should be paid in fixed installments after the date of such completion, both of the instruments are to be taken together, as parts of one transaction, with the same effect as if they had been incorporated together, and the contractor is not entitled to demand payment for the completed work from such property owner except in the installments agreed upon.

ID.—ACTION UPON CONTRACT—MODIFICATION—PLEADING—AMENDMENTS— CONFORMITY TO PROOF.—Where the plaintiff in an action upon such contract pleaded the modification thereof by agreement with the defendant for payment in installments, and, after both parties had rested, amended the complaint by striking out the averment of modification, the defendant is entitled to avail himself of proof thereof, and to have the answer amended to conform to the proof.

CXXXI. Cal.—31

ID.—EFFECT OF FAILURE TO PAY INSTALLMENT DEMANDED—ABSENCE OF STIPULATION FOR MATURITY.—The failure of the defendant to pay an installment demanded could not have the effect to give a right of recovery for the whole of the contract price, in the absence of a stipulation in the agreement that the installments not due should become due upon such failure.

ID.— REPUDIATION OF EXECUTORY CONTRACT— REFUSAL OF PERFORMANCE—ACTION FOR BREACH—INAPPLICABLE RULE.—The rule applicable to the repudiation of contracts not fully performed on either side, upon the refusal of further performance by one party, and a right of action then accruing for damages for breach in favor of the other party, has no application to a contract for work fully performed on one side, which is to be paid for in installments by the other party; and notwithstanding a failure to pay any one of such installments, the contractor cannot treat the contract for payment by installments as repudiated or rescinded, and demand payment in full, contrary to the terms of the contract.

ID.—INSTALLMENTS NOT DUE—ERROR IN JUDGMENT.—Where only one of the installments agreed upon had matured at the commencement of the action, the court erred in deciding that the plaintiffs were entitled to judgment for the full amount of the contract price.

ID.—POWER OF COURT TO LIMIT NEW TRIAL—FINAL DECISION AS TO EXCLUDED MATTER—STATEMENT OF CASE.—The court may limit its order for a new trial to a portion of the issues, and where such order is not appealed from or modified, it becomes final as to matter excluded therefrom, and such matter may be properly included in the final judgment, and no evidence as to such excluded matter should be incorporated in a final statement of the case.

ID.—ADMITTED CLAIM OF LIEN FOR SIDEWALK—NEW TRIAL AS TO PAVING CONTRACT—AMENDED ANSWER.—Where a claim of lien for a bituminous sidewalk was not denied in the answer, and judgment was rendered therefor, and a new trial was granted, limited to the issues upon the paving contract, the filing of an amended answer denying the lien for the sidewalk can have no effect upon the new trial or upon the power of the court to include the lien in its final decision, and the evidence relating thereto need not be incorporated in the statement of the case.

ID.—PRIVATE CONTRACT FOR WORK ON STREET—PERMISSION OF SUPERVISORS.—The permission of the supervisors to do the work on a street by private contract is only required when the contract is for grading, and a contract for paving the street need not have such permission, and its absence does not render the work or the contract therefor illegal.

ID.—DISTURBING STREET—PERMISSION OF STREET SUPERINTENDENT—EVIDENCE.—The permission of the superintendent of streets was sufficient to justify the digging up and disturbing the street for the

purpose of paving the same, and the exclusion of evidence as to such digging and disturbance was immaterial.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial.    J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

R. Percy Wright, for Appellant.

D. H. Whittemore, and J. C. Bates, for Respondents.

HARRISON, J.—The plaintiffs entered into a contract with the defendant to do certain work upon Laguna street, in San Francisco, in front of her property, and brought the present action to recover after its completion the amount agreed to be paid by her, and to have the same decreed a lien upon her property.    The court rendered its decision in favor of the plaintiffs, giving them a lien upon one parcel of the plaintiffs' land for a portion of their claim and a personal judgment against the defendant for the remainder.    A new trial was denied and the defendant has appealed.

Negotiations had been had between the parties with reference to paving the street, and a proposal therefor had been presented to the appellant on behalf of the plaintiffs, and a formal contract for that purpose, bearing date April 10th, was afterward prepared by them and submitted to her.    By the terms of this contract she was to pay twenty-four cents per square yard for paving, but in the proposal originally made to her the plaintiffs had offered to do the same at the rate of twenty cents per square yard.    Before the execution of this contract, viz., April 14th, the plaintiffs visited the appellant at her house, and while there the terms of the agreement were discussed— Mr. Alpers, who appears to have acted in behalf of the appellant and as her adviser, being also present—and at that interview an instrument was prepared by the plaintiff Flinn, which purported to be a receipt from the appellant for the difference between twenty-four cents per square yard, as named in the contract, and twenty cents therefor, as had been agreed upon between them, and which also contained the following:

"The balance ($1,305.59) thirteen hundred five and fifty-nine one-hundredths to be paid in installments of two hundred dollars per month, the first payment to become due four months from date of completion, and each subsequent payment to mature within thirty days next succeeding, all without interest." After this agreement had been signed by the plaintiffs the appellant expressed herself satisfied, and directed Mr. Alpers to sign the contract, which he thereupon did as follows: "E. M. Mowry, per C. Alpers." At this time only one property owner had signed the contract, and it being a private contract it was necessary that the owners of a majority of the frontage should sign it in order to obtain a permit for doing the work. The contract was therefore inchoate, and was left with Mr. Alpers, who afterward procured other property owners to sign it, and returned it to the plaintiffs. This evidence was sufficient to justify the court in finding that the defendant entered into the agreement with the plaintiffs set forth in the complaint.

1. The two instruments thus prepared and signed by the respective parties constituted the agreement between them in reference to the work to be done by the plaintiffs and the payment therefor by the defendant. They were parts of one transaction, related to the same matter, were signed at the same time, and are to be taken together, with the same effect as if the terms of both had been incorporated in one document and signed by both parties (Civ. Code, sec. 1642); and are to be construed, so far as practicable, as to give effect to every part of each instrument. (Civ. Code, sec. 1641.) The provision in the instrument first prepared, wherein the appellant agreed to make the payment "upon the completion of the work," and the provision in the instrument of April 14th, wherein the plaintiffs agreed that the payment should be made in monthly installments of two hundred dollars each, are easily reconciled by considering that this change in the time of payment was agreed upon after the instrument of April 10th had been prepared and submitted to the appellant. The instrument of April 14th being signed by the plaintiffs is, under section 1654 of the Civil Code, to be interpreted most strongly against them. Its terms are equivalent to an express agreement that the plaintiffs should

not be entitled to payment, and would not demand it except in monthly installments of two hundred dollars each.

That this was the understanding of the plaintiffs is shown by their complaint as originally filed, and upon which they presented their case to the court, wherein, after alleging as one of the terms of the instrument of April 10th, that each of the owners of property fronting on the street agreed to pay for the work "upon the completion thereof," they allege in paragraph 8: "That at the time of entering into said agreement it was further modified as to said defendant E. M. Mowry, so that the amount due from her thereunder should be paid as follows: two hundred dollars, to be paid sixty days after completion of said contract, and two hundred dollars each month thereafter until the amount due thereunder should be fully paid"; and also by the fact that after they had completed the work they demanded from the appellant only the first installment of two hundred dollars.

After both parties had rested the plaintiffs, by leave of the court, amended their complaint by striking out the above paragraph 8, but the defendant was not thereby precluded from availing herself of the modification therein alleged. Inasmuch as this modification was originally alleged in the complaint, there was no occasion for setting it up in her answer, and as it had been introduced in evidence, she had a right to avail herself of its provisions after the complaint was thus amended by amending her answer so that the allegations might conform to the proofs.

The contention of the respondents that the failure of the appellant to pay this installment when it was demanded gave them a right to a recovery of the whole amount of the contract price cannot be maintained. No stipulation of this nature is contained in the agreement, and such right did not arise from a mere failure of the appellant to make the payment. Certain cases have been cited by them in support of this contention wherein it has been held that in contracts for the sale or manufacture of goods to be delivered in installments and paid for at each delivery a failure on the part of the buyer to make a payment may be under such circumstances as will justify the seller to consider the contract as repudiated and to release him

from further performance. It is also the rule that where a continuing or executory contract has not been fully performed on either side, the repudiation of the contract by one party or his refusal of further performance will justify the other party in treating the contract as at an end, and give to him a right of action for damages for its breach. (See *Hale v. Trout*, 35 Cal. 228.) The rule in these cases has, however, no application to a contract for labor which has been fully performed on one side, and there remains only payment therefor. There can be no rescission or abandonment of a contract by a party who has fully performed his part of it. The obligation of the other party is measured by the terms of his agreement to the same extent as in any other contract. If this obligation is for the payment of money, and by his agreement such payment is to be made in installments, a failure to pay the first installment will no more give a right of action to recover them all than in the case of an ordinary promissory note which is made payable in periodical installments, and in which there is no provision for the maturity of the whole amount upon the failure to pay one of the installments. The agreement in the present case is specific and unambiguous that the defendant should make the payment for the work done by the plaintiffs in monthly installments of two hundred dollars each, and the finding of the court that the plaintiffs gave to the defendant "an option to pay the money due for said work in monthly installments of two hundred dollars" is not sustained by the evidence. Neither does the evidence sustain the further finding that "when said first installment became due defendant refused to pay any sum at all, and has ever since refused to pay anything for said work." The complaint merely alleges that she had not paid the sums due upon the contract. The only evidence tending to support any finding of nonpayment was that the plaintiffs had demanded payment of the first installment. The only objection that is shown to have been made by the defendant to the performance of her part of the contract was her claim that the plaintiffs had not done the work in accordance with the terms of their agreement. This is not the equivalent of a "refusal" to pay any sum at all. As only one of these installments had matured at the commencement of the present action, the

court erred in deciding that the plaintiffs were entitled to judgment for the full amount of the contract price.

2. In addition to the claim upon the contract for paving the street, the complaint set forth a claim for constructing a bituminous rock sidewalk on the street in front of a portion of the appellant's land. Defendant filed her answer January 16, 1895, but did not deny the allegations in reference to this sidewalk. The case was tried upon these pleadings April 13, 1896, at which time the court found in favor of the plaintiffs, and that they were entitled to a lien for the amount due for laying this sidewalk, amounting to two hundred and forty-one dollars, and also to a personal judgment against the appellant for the amount due upon the contract for paving the street. Upon motion of the defendant for a new trial the court set aside that portion of its decision upon the contract for paving, ordered a new trial as to the issue thereon, and denied the motion for a new trial in all other respects. Another trial was had upon this issue in November, 1897, and the court again made its decision thereon in favor of the plaintiffs. After both parties had rested at this trial the plaintiffs, by leave of the court, amended their complaint by striking out the above-named paragraph 8, and the defendant afterward filed an amended answer in which she denied that she had made any contract for laying the sidewalk. The findings herein recite the proceedings had upon the former trial, including the former decision in reference to the claim for laying the sidewalk. The appellant in her statement on motion for a new trial specified as one of the grounds for setting aside the decision that this finding in reference to the sidewalk is not sustained by the evidence.

It was not necessary that the evidence in reference to this claim should be incorporated in the statement. No issue thereon was presented by the answer on which the cause had been originally tried, and the decision made thereon became a part of the records of the court which it could adopt and include in its final decision. The order for a new trial excluded this portion of its decision from any further consideration, and by failing to appeal therefrom or otherwise to seek to have the order modified, it became final as to the defendant, and was

not affected by her afterward filing an answer in which the allegation was denied.   The right of the court to limit its order for a new trial to a portion of the issues in the case is well established.   (*Duff v. Duff*, 101 Cal. 1.)

3. It is urged by the appellant that the court erred in excluding certain questions tending to show that the street was closed by the plaintiffs while performing their work thereon, and that in the performance of their contract they dug up and disturbed the street.   These questions are claimed to have been proper for the purpose of showing that inasmuch as the plaintiffs did not obtain permission from the board of supervisors to do the work, the contract, therefore, was illegal and could not be the basis of a recovery.   *San Francisco v. Buckman*, 111 Cal. 25, is relied upon in support of this contention.   That case, however, was decided upon the provision in subdivision 10 of section 7 of the street improvement act, which declares that the owners of land may perform the "grading" upon the street in front of their property "after obtaining permission from the council to do so."   The contract in the present case is for other work than grading, and this provision of the section has no application.   A contract is not to be held unlawful unless it is either contrary to some express provision of the law or to its policy.   (Civ. Code, sec. 1667.)   This restriction on property owners from doing work upon the street in front of their property is limited to grading, and the provision in a subsequent portion of the section that "whenever any owner or owners of any lots or lands fronting on any street shall have heretofore done or shall hereafter do any work (except grading) on such street in front of any block at his or their expense," the work so done shall be excepted from any order for improving the street, implies the right of the owner to do such work and to contract therefor without obtaining such permission.   Under their general supervision of the streets of the city the board of supervisors have adopted an ordinance forbidding anyone from digging up or disturbing a street without the permission of the superintendent of streets; but as permission from the superintendent was obtained in the present case, the questions which were excluded by the court were immaterial.

Garoutte, J., and Van Dyke, J., concurred.

THE COURT.—That portion of the judgment decreeing a lien against the lands of the defendant in the sum of two hundred and thirty-eight dollars and seventy-six cents and directing a sale of said lands in satisfaction thereof is affirmed. The judgment against the defendant for the sum of eleven hundred and forty-six dollars, with interest thereon, for the paving and curbing of Laguna street is reversed, and a new trial is ordered of the issues upon which the said personal judgment was given. The order denying a new trial, so far as it applies to the issues upon which the judgment was rendered for laying the sidewalk and decreeing a lien therefor, is affirmed.

---

[Sac. No. 759.   Department One.—February 1, 1901.]

P. J. VAN LOBEN SELS, Respondent, v. C. BUNNELL et al., Appellants, and RECLAMATION DISTRICT No. 551, Respondent.

|131 489|
|136 315|
|136 316|

FORECLOSURE OF MORTGAGE—ORDER VACATING SALE UNDER DECREE—JURISDICTION.—The jurisdiction of the court in actions for the foreclosure of a mortgage over the parties and the subject matter continues until the foreclosure is completed by failure to redeem from the sale under the decree; and it has power to vacate an irregular sale before the expiration of the time for redemption, as against the purchaser, who by his bid submits himself to the jurisdiction of the court.

ID.—SALE NOT AUTHORIZED BY DECREE—FORECLOSURE OF PRIOR LIEN—SUBSEQUENT JUDGMENT IN DIFFERENT ACTION.—A sale under the foreclosure of a mortgage, not authorized by the decree which required the payment, first, of a prior lien foreclosed in the action by cross-complaint, and, secondly, the plaintiff's mortgage, but made in pursuance of a subsequent judgment rendered in a different action brought by the wife of the mortgagor, as an alleged homestead claimant, against the sheriff and the prior lienholder, by which a temporary injunction was dismissed and the sheriff was directed to proceed with the sale, and first to pay the plaintiff's mortgage and then to bring the remainder of the proceeds into court, at which sale the mortgagee became the purchaser for the amount only of his debt, is grossly irregular, if not void, and should be set aside.

ID.—INVALIDITY OF SUBSEQUENT JUDGMENT—DECREE OF FORECLOSURE
NOT MODIFIED.—The subsequent judgment in the action by the
wife of the mortgagor had no validity as against the parties
to the foreclosure, and could not properly be regarded as a
modification of the decree rendered therein.

ID.—PARTIES TO FORECLOSURE—CROSS-COMPLAINT BY PRIOR LIENHOLDER
—FORECLOSURE OF LIEN.—A prior lienholder is a proper, though not
a necessary, party to an action to foreclose a mortgage; and
when made a party, he may seek the foreclosure of his lien by
cross-complaint.

ID.—DEFECTS IN CROSS-COMPLAINT—SERVICE—JURISDICTION.—Defects in
the cross-complaint as to parties and service thereof, where all
the parties were in court, and their presence is recited in the
decree, cannot affect the jurisdiction of the court to foreclose
the prior lien asserted therein; nor could jurisdiction be affected
by the insufficiency of the cross-complaint, if it alleges the ex-
istence of the lien and prays for general relief.

APPEAL from an order of the Superior Court of Sacra-
mento County vacating a sale under a decree of foreclosure.
Joseph W. Hughes, Judge.

The facts are stated in the opinion.

H. C. Ross, for C. Bunnell and Elizabeth D. Bunnell, Ap-
pellants.

Devlin & Devlin, for Germania Building and Loan Associa-
tion, Appellant.

H. W. Johnson, for P. J. Van Loben Sels, Respondent.

A. L. Shinn, for Reclamation District No. 551, Respondent.

SMITH, C.—Appeal from an order setting aside a sale of
land under a foreclosure decree.

The appellants are the defendants C. Bunnell and the Ger-
mania Building and Loan Association, and Elizabeth Bunnell,
who is not a party to the suit. The defendant Bunnell derived
his title from the plaintiff under a deed reserving a lien for
certain moneys, part of the consideration, which is the lien fore-
closed. The building and loan association is a junior mort-
gagee. It answered, setting up its mortgage, but not praying
for foreclosure. The Reclamation District No. 551, a defendant,

had a lien for an assessment upon the land, prior to that of the plaintiff, which it set up by answer and cross-complaint.   Judgment of foreclosure was rendered directing the sheriff to sell the premises, and out of the proceeds, after retaining his fees, etc., to pay first to the defendant, the reclamation district, the amount due to it (seventeen hundred and seven dollars and forty-one cents), and afterward to the plaintiff the amount due to him (seven hundred and fifty-five dollars and seventy-eight cents), with attorney's fee (one hundred and fifty dollars), and costs.   This judgment on the appeal of the building and loan association was affirmed by this court May 20, 1898.   (*Van Loben Sels v. Bunnell,* 120 Cal. 680.)

An order of sale on the judgment was issued July 8, 1895, and thereupon the appellant, Elizabeth Bunnell, wife of the defendant Bunnell, claiming the land as a homestead, commenced an action in the same court against the sheriff, Johnson, the plaintiff, Van Loben Sels, and the reclamation district to enjoin the sheriff from selling, and a temporary injunction was issued. The suit was afterward dismissed by the plaintiff as to the defendants Van Loben Sels and the reclamation district, and judgment was rendered November 26, 1898, dismissing the injunction and directing the sheriff to proceed with the sale under the judgment in *Van Loben Sels v. Bunnell et al.,* but further directing him, after retaining his costs, to pay the proceeds first to the plaintiff, Van Loben Sels, and the overplus, if any, into court, thus ignoring the judgment in favor of the reclamation district.

Accordingly, a new order of sale was issued December 20, 1898, referring to the judgment, of which a copy was attached, and the sheriff advertised the property for sale, the notice, so far as material, being as follows:

"Notice is hereby given by F. T. Johnson, sheriff of the county of Sacramento, state of California, that under and by virtue of a judgment rendered by the superior court of the said county, July 8, 1895, in an action therein pending, wherein P. J. Van Loben Sels is plaintiff and C. Bunnell, Germania Building and Loan Association (a corporation), Edward Bunnell, and Reclamation District No. 551 (a corporation), are de-

fendants, which said judgment was rendered in favor of said plaintiff and against said defendants Bunnell and Germania Building and Loan Association for seven hundred and fifty-seven dollars and eighty cents, and one hundred and fifty dollars attorneys' fees, together with expenses and costs in said action, and interest upon said amount of said judgment from the date thereof to the date of sale at seven per cent per annum; and by virtue of an order of sale issued out of said court upon said judgment on the twentieth day of December, 1898, and to satisfy said judgment I will, on Monday, the sixteenth day of January, 1899, at the hour of 10 o'clock A. M., at the front door of the courthouse, at the corner of Seventh and I streets, in the city of Sacramento, California, sell at public auction to the highest and best bidder for cash, in gold coin of the United States, the following described real property, to wit: [describing the property]."