[Crim. No. 1579. In Bank.—August 11, 1910.]

## THE PEOPLE, Respondent, v. WILLIE LUIS, Appellant.

CRIMINAL LAW—MURDER—SUPPORT OF VERDICT—CONFESSIONS—ADMISSIONS BY DEFENDANT.—Where the perpetrator of the murder charged against defendant was otherwise doubtful apart from the confessions of the defendant, but taking such confessions as true, the case against him is complete; and where the defendant himself testified as a witness that he had made a confession, and he did not controvert the evidence of witnesses who testified to his confessions, the verdict of guilty of murder in the first degree is amply supported.

ID.—TRUTH OF EVIDENCE OF CONFESSIONS A QUESTION OF FACT.—The question of the truth of the evidence of the defendant's confessions was one of fact solely for the jury and for the trial judge on motion for a new trial.

ID.—EVIDENCE OF CONFESSION TO HALF SISTER—MURDER OF MOTHER—VOLUNTARY CONFESSION.—Where the defendant, without any inducement, confessed voluntarily to his half sister upon her asking him in the jail if he did not kill her mother, that he did kill her, such confession was clearly admissible, as voluntary.

Id.—Confession to Officers—Proof of Voluntariness.—Where the defendant made a full and formal confession in the presence of the sheriff, district attorney and other persons, within the walls of the jail, in answer to questions proposed by the district attorney, and the evidence shows clearly that no promise or inducement or threat was held out to him, but that he was told by the district attorney that he need not answer any questions, and that any answers he might give would be used against him, the confession was shown to be voluntary, and was admissible.

Id.—Previous Statement by Private Person—Advice to Confess Truth—Improper Inducement not Shown.—Where a previous interview with the defendant was had by a private person, in no way connected with the officers, in which in response to a question by the defendant as to what it was best for him to do, such person stated that if he had committed the crime, he thought it the best thing for him to confess the truth, such unauthorized private expression of opinion should not be construed as an improper inducement to the defendant to confess, he not being led to suppose that the advice was given with the sanction of any other person.

Id.—Rule of Exclusion of Confession for Inducement not Extended—Mere Admonition or Advice.—The rule of the exclusion of a confession for improper inducement should not be extended to a mere admonition or advice to the defendant to speak the truth when the language used and all the circumstances are not such that they should be construed as an inducement to a confession of guilt.

Id.—Secret Hope of Defendant not Affecting Confession.—The mere fact that the defendant secretly hoped that the effect of making a complete confession of guilt would be to lighten his punishment, and make it better and easier for him, could not operate to render his confession inadmissible, if that hope was not improperly induced. The confession may be free and voluntary, notwithstanding the existence of such a hope.

Id.—Want of Inducement—Advice as to Rights—Understanding—Non-Essential Condition of Voluntariness.—There being an absolute want of improper inducement, the fact proved that the defendant was fully advised as to his rights by the district attorney and understood that anything he might say would be used against him, was not necessarily essential to render the statement of his guilt a free and voluntary one.

Id.—Confession Taken through Interpreters—Transcribed Shorthand Report Inadmissible—Testimony of Interpreters.—Where the confession was taken through Chinese interpreters, and was taken down in shorthand by a stenographer from the interpretation thereof in English, the transcribed English report not having been read to or signed by the defendant, was inadmissible; and the only competent evidence of the defendant's confession was that of the interpreters, who heard and testified to the substance of the confession made by the defendant.

ID.—POSITION OF REPORTER AT HEARING—BYSTANDER—PRIVATE MEMO-
RANDA.—The position of the reporter at the hearing was that of a
mere bystander; and both his notes and the transcription thereof
constituted simply, in effect, private memoranda.

ID.—PAROL EVIDENCE OF STATEMENT.—There being no competent writ-
ten evidence of the statement, parol evidence of it was admissible,
and could be properly given by any person hearing it made by the
defendant and understanding what he said. The mere fact that the
witnesses could not remember, word for word, the whole conversation
between the district attorney and defendant, was not a sufficient
ground for the exclusion of their evidence as to what they did
remember of the whole substance of the defendant's statements.

ID.—RULES AS TO WRITTEN EVIDENCE.—It is only when the confession
is taken down in writing and signed by the accused, or its truth
acknowledged by him, or is written by him, that he can claim the
rules applicable to a written confession.

ID.—RULES AS TO PAROL EVIDENCE.—When parol evidence of the confes-
sion is admitted, the defendant has the right to have the whole of
what he said admitted; but this rule does not prevent the substance
of the whole or of a distinct part of the confession from being
admitted in a proper case. Where the witness heard and understood
the whole statement, and it satisfactorily appears that he remem-
bers the substance thereof, he is competent to testify to what he
does remember, though he cannot remember everything that was said.
A witness may testify to part of an entire conversation, if he heard
only a part, and such part appears to be complete and intelligible.

ID.—IMPROPER PAROL EVIDENCE.—The rules as to parol evidence do not
include a mere scrap of a conversation insufficient to give an intel-
ligible understanding of what was said, or only occasional words
understood by one not understanding the language used, or words
remembered, where the witness fails to remember qualifying words
used by the accused, or words essential to an understanding of the
part given.

ID.—MURDER OF CHINESE WOMAN—IMPROPER EVIDENCE—LOW ESTIMATE
OF FEMALE LIFE IN CHINA—DISCRETION OF JURY.—Where the de-
fendant was charged with the murder in the first degree of a
Chinese woman in this state, evidence was properly excluded as
to the low estimate put on female life in China. This evidence could
not assist in determining the intent, deliberation, and premeditation
essential to constitute murder in the first degree under the law of
this state, nor was it competent to assist the jury in exercising its
discretion to substitute imprisonment for life, instead of death as a
punishment for the offense.

ID.—EXPERT EVIDENCE—JUDGING OF DEFENDANT'S INTELLECT FROM GEN-
ERAL APPEARANCE—QUALIFICATION NOT SHOWN.—Even if it be con-
ceded to be a subject of expert evidence to judge of the mental
character of the defendant from his general appearance, an objec-
tion was properly sustained to a question asked of a physician who

had practiced three years in China, whether, judging from the general appearance of the defendant, he was "possessed of the average amount of intellect," where the court was warranted in concluding that the physician had not had sufficient opportunity to acquire knowledge of the defendant's mind sufficient to answer the question.

ID.—Misconduct of District Attorney not Prejudicial—Action of Court.—Where the defendant testified in his own behalf, solely to attack the voluntariness of his confession, the jury were the exclusive judges of its voluntariness, notwithstanding its admission by the court, as voluntarily given; and where the jury came in to request the reading of the evidence of the defendant, it was improper for the district attorney to state to the court, in the hearing of the jury, that the jury were not entitled to consider the evidence of the defendant, because it referred exclusively to the admissibility of the confession, and the circumstances under which it was made, which was part of plaintiff's case; but where the judge instructed the jury to disregard what was said between court and counsel, and immediately ordered the evidence of the defendant to be read to the jury, the misconduct of the district attorney was without prejudice, and does not require a reversal.

APPEAL from a judgment of the Superior Court of San Luis Obispo County and from an order denying a new trial. E. P. Unangst, Judge.

The facts are stated in the opinion of the court.

Thomas Rhodes, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, for Respondent.

ANGELLOTTI, J.—On October 19, 1909, an information was presented and filed in the superior court of San Luis Obispo County, charging the defendant with the crime of murder in the killing of one Gon Ying Luis, a Chinese woman. Having entered his plea of not guilty, defendant was tried, and on November 24, 1909, the jury returned its verdict of guilty of murder in the first degree, and on November 29, 1909, he was adjudged to suffer the death penalty, his motion for a new trial having been denied. On the same day he duly took an appeal to this court from the judgment and order denying a new trial.

1. It is not claimed by counsel for defendant that the evidence was not legally sufficient to support the conclusion of

the jury, and, in view of evidence given as to confessions made by defendant, such a claim could not be sustained. That the deceased was foully murdered as she lay asleep in her bed on the morning of September 30, 1909, is shown beyond the possibility of doubt, but it must be conceded that in the absence of the evidence of extra-judicial confessions by defendant, which was given exclusively by Chinese witnesses, the evidence tending to show that defendant was the person who killed deceased was exceedingly slight. Indeed, such evidence pointed with as much certainty to another as the sole perpetrator of the murder as it did to defendant. But taking the evidence of the confessions as true, the case against the defendant was complete. The question of the truth of that evidence was one solely for the jury and the trial judge on motion for a new trial. Their conclusion is not surprising in view of the fact that defendant went upon the witness-stand and admitted the making of a confession, and the further fact that there was not on the part of the defense any denial or attempt at denial of the evidence of the other witnesses as to what he said in that confession.

2. There is no support in the record for the claim that the trial court erred in concluding that the extra-judicial statements of defendant as to the commission by him of this crime were free and voluntary, made without any improper inducement or coercion. One of these alleged statements was testified to by Laine May Luis, a daughter of deceased and half sister of defendant, as having been made to her by the defendant while confined in the county jail. She testified that she asked defendant if he did kill her mother and that he answered that he did. As to this conversation between defendant and Laine May Luis the showing was entirely satisfactory that there was no improper inducement. The other statement was a more formal affair. The defendant, in the presence of the sheriff, district attorney, and several other persons, including some Chinese, and within the walls of the county jail, made his statement by answering questions asked him by the district attorney. Before the introduction of evidence of this statement, evidence was introduced to the effect that before the making thereof no promise was made to defendant by any one, no inducement held out to him, no threat made against him, and that defendant was told by the district

attorney that he need not answer any questions, and that any answers he might give would be used against him. The nearest thing to an inducement of any kind testified to at all was that testified to by Wong Bick Yue, namely, that he had told defendant in the jail, no other person being present, in response to a question by defendant as to what was the best thing for him to do, that if he committed this crime, he thought the best thing for him to do was to confess. This was from half an hour to an hour prior to the making of the statement, and the defendant then asked the witness to send for the district attorney. The defendant, a man about forty years of age, was a witness for the purpose of showing the reason why he made the statement. He testified that he made it because he wished to ask the court to give him a lighter punishment, and that he thought it would be better and easier for him if he made it. He further testified that no one told him that it would be bad for him to make the statement or what the effect of such a statement would be, and further that no one told him that it would have any effect in any way if he made the statement. The evidence given was clearly sufficient to support the conclusion of the trial court in admitting evidence as to the statement itself. There was nothing to indicate that the advice of Wong Bick Yue was given under such circumstances as to lead accused to suppose that it was given with the sanction of a person in authority (see 1 Elliott on Evidence, sec. 282), and it amounted, according to the evidence, to no more than the expression of opinion on the part of a third person in no way connected with the public authorities, that in his judgment it would be better to tell the truth, whatever the truth might be. The evidence of Wong Bick Yue on this was that he said: "If you did it, the best thing is to confess, I think." Mr. Elliott, in his work on evidence, says that the rule of exclusion should not be extended to mere admonition or advice to speak the truth, where the language and circumstances are not such that they should be construed as an inducement to a confession of guilt. (Vol. 1, sec. 279. See, also, 1 Wigmore on Evidence, sec. 382.) In *People v. Barric,* 49 Cal. 342, cited by defendant, the advice that "it would be better for him (defendant) to make a full disclosure" was assumed to have been given by the sheriff of the county, and this advice was

given under such circumstances as were held to make it an improper inducement. We are aware of no case holding that a confession should be excluded merely because it was induced by the advice of a third person to the effect simply that it would probably be better to tell the truth, given in the absence of any officer or person in authority, and not given under such circumstances as to lead the accused to suppose it was given with the sanction of any such person. The mere fact that the accused secretly hoped that the effect of making a complete statement showing his guilt would be to lighten his punishment and make it better and easier for him could not operate to render the statement inadmissible if that hope was not improperly induced. It is manifest that the statement may be free and voluntary notwithstanding the existence of such a hope. The evidence here was sufficient to sustain a conclusion of absolute want of improper inducement. It was likewise sufficient to sustain the conclusion that defendant was fully advised by the district attorney of his rights and that anything he might say would be used against him and that he fully understood this. We do not mean to imply that this was necessarily essential to render the statement a free and voluntary one, but what we have said is a sufficient answer to the claim of counsel that the accused should have such an understanding of the matter.

3. Objection was made to the method used in proving the statements made by the defendant on the occasion last referred to. Among those present was Mr. A. B. Green, a shorthand reporter. The examination of the defendant was had solely through interpreters. Green took, in shorthand, the questions asked by the district attorney and the answers thereto as they came in English from the interpreters. It may be assumed that these shorthand notes were subsequently transcribed into longhand and that such transcription was placed in the possession of the district attorney. There was no pretense, however, that the statement as taken down by Green was ever read to the defendant, or that he subscribed the same or in any way acknowledged it to be a correct statement of what had been said. Green, of course, did not act on this occasion in any official capacity. These being the circumstances, the Chinese interpreters, who were present throughout the proceedings, were allowed to testify to what questions were asked

the defendant and what answers he gave thereto. This was the only evidence offered on the trial as to what the defendant said on that occasion, neither the transcribed statement made by the reporter being offered in evidence, nor the reporter being called upon to testify as to what was said. The district attorney was apparently of the opinion that the reporter, who did not understand the Chinese language, could not testify to what was said through the interpreters, notwithstanding that the córrectness of the translations was sufficiently established. His conclusion in this regard is apparently supported by the decisions in this state. (See *People* v. *John,* 137 Cal. 220, [69 Pac. 1063], and cases cited therein.) While the interpreters testified at great length as to the conversation between the district attorney and defendant, which they interpreted, and heard everything that was said in that conversation, naturally enough they did not pretend that they could remember every question asked or every answer returned. They did, however, remember the substance of the conversation, testifying in effect that defendant said that he killed Gon Ying Luis with a pistol found in the watercloset where he had put it, that she was asleep when he killed her, that he took certain tin boxes from her room and subsequently buried them in the garden where they were found, and that he did the shooting after his father had left the house, and testifying further to many other details of the crime as stated by defendant. The district attorney repeatedly offered to stipulate that the transcription of the reporter showing the whole conversation should be read in evidence or that the reporter should be allowed to testify as· to the conversation, using his transcription as a memorandum, but this was declined by defendant.

There was no error in the rulings of the court in this matter. The transcription of the reporter was, of course, not admissible. It had not been subscribed by the defendant or acknowledged by him in any way as being his statement, and therefore was not his writing and did not constitute a written confession. The reporter himself occupied, as has been said, the position of a mere bystander at the hearing (*People* v. *Gardner,* 98 Cal. 127, 131, [32 Pac. 880]), and both his notes and his transcription thereof constituted simply, in effect, private memoranda. (*Estate of Benton,* 131 Cal. 472, 480,

[63 Pac. 775].)   There was thus no competent written evidence of the confession.   Parol evidence of the statement of defendant was, of course, admissible.   Such evidence could properly be given by any person hearing it made by the defendant and understanding what he said.   Under the doctrine of *People* v. *John,* this was the only way in which it could be proved.   The cases cited by counsel for defendant are not in point for the reason that they refer to cases where a writing has been so executed or acknowledged by the accused as to make it his own written document.   For instance, in *State* v. *Haworth,* 24 Utah, 398, [68 Pac. 155, 159], the rule applied was the rule stated in 1 Roscoe Cr. Ev., 8th ed., 90, as follows: "If the confession is taken down in writing and signed by the prisoner, or its truth acknowledged by parol, or if it be written by him, then it is put in as an ordinary document and read by the officer of the court." It is only where it has been so made the writing of the accused that he can claim that rules applicable in the case of a written confession are applicable.   The mere fact that the witnesses could not remember word for word the whole conversation between the district attorney and defendant was not a sufficient ground for the exclusion of their evidence of what they did remember.   It is true, of course, that a confession should be construed as an entirety, and that it is the right of the accused if any part of a confession made by him is introduced in evidence to have the whole of what he has said admitted. But this rule does not prevent the substance or part of the confession that the witness heard and remembers being admitted in a proper case.   (See 1 Elliott on Ev., sec. 295, note.) This does not mean that the hearing of such a mere scrap of a conversation as is insufficient to give the hearer an intelligible understanding of what was said is sufficient (*People* v. *Irwin,* 77 Cal. 506, [20 Pac. 56]); or that where, by reason of his inability to understand the language of the accused the witness understood "only an occasional word" he can testify as to the few words he thought he understood (*People* v. *Gelabert,* 39 Cal. 663); or that where the witness shows that he fails to remember a portion of the words of the accused used to qualify his statement or that was essential to an understanding of the part given, he can testify to the words he did hear and remember (*People* v. *Tarbox,* 115 Cal. 64, [46 Pac. 896]); but

CLVIII Cal.—13

simply that where the witness heard and understood the whole statement and it satisfactorily appears that he remembers the substance thereof, he is competent to testify as to what he does remember, even though he cannot remember everything that was said. This is as far as it is ncessary to go in this case and it is unnecessary to discuss the decisions just cited. It is said in the case last cited that "it is well settled that the witness may testify to a part of an entire conversation, if he heard only a part, and such part appears to be complete and intelligible." If anything said in *People* v. *Keith,* 50 Cal. 137, may be construed as opposed to our conclusion, it is opposed to the later statement of the court, just quoted, and is not, in our judgment, correct. It may be added that there was no claim on the trial that the interpreters did not fully and truthfully testify as to all material parts of defendant's statement.

4. Counsel for defendant urges that the court erred in excluding certain evidence as to the mental condition of the defendant, not amounting to evidence of insanity or idiocy, offered for two purposes, (a) to enable the jury to intelligently exercise the discretion confided to them of determining whether the defendant, if found guilty of murder in the first degree, should suffer death or imprisonment in the state prison for life (Pen. Code, sec. 190), and (b) to enable the jury to determine the intent or lack of intent of the defendant in committing this homicide. Section 190 of the Penal Code makes death the punishment for murder in the first degree, but gives the jury the power, in its discretion, to substitute life imprisonment therefor. (*People* v. *Welch,* 49 Cal. 178; *People* v. *French,* 69 Cal. 176, [10 Pac. 378].)

The evidence offered upon this matter was very meager. One branch of it consisted of a question asked a witness as follows: "What estimation or value is placed on the life of a female in China, if you know?" The object apparently was to show that in the Chinese mind a Chinese woman amounted to very little, and that the taking of the life of such a woman was not, in defendant's estimation, a very serious matter. This evidence could not, of course, assist in the determination of the question of the intent, deliberation, and premeditation essential to constitute murder in the first degree. And if we assume that a defendant in a murder case

is entitled to introduce evidence not material or admissible on the question of his guilt or the degree of his offense, solely for the purpose of assisting the jury in the exercise of the discretion confided to it by section 190 of the Penal Code, we are satisfied that the proposed evidence was not competent for that purpose. Whatever evidence may be so introduced, certainly evidence of the opinion of the murderer as to the value or importance of the life of the party murdered by him can play no legitimate part in his favor. The other branch of the proposed testimony consisted of certain questions addressed to Mrs. Helgesen, a physician who had practiced medicine in China for about three years. She said it had been a part of her medical course to judge of the mental character of a human being from his general appearance. She had seen the defendant in the courtroom, and had glanced at him once when he was going up the stairs to the courtroom. She was asked to state whether, judging from his appearance, he was "possessed of the average amount of human intellect." Counsel for defendant stated that it was not proposed to show "insanity or anything of that sort," but simply that it was proposed to show by an opinion based solely on defendant's "exterior appearance" "that he is a person with a feebler mind than that of the average intellect of the prevailing conditions." The court sustained the objection of the district attorney to the question. There was no error in this ruling. Even if this be conceded to be a proper subject for expert testimony, the trial court was amply warranted in concluding that the witness had not been shown to have had sufficient opportunity to acquire such knowledge concerning the defendant's mind as would qualify her to answer the question asked her and this ground of objection was substantially included in the objection made by the district attorney.

5. Prejudicial misconduct on the part of the district attorney is alleged. The defendant was examined as a witness solely as to the circumstances under which the confession was made and preliminary to its introduction in evidence, for the purpose of showing that it was not freely and voluntarily made, and, therefore, should not be admitted in evidence, and he did not otherwise testify on the trial. After the jury had retired to deliberate, they were again brought into court upon request, and, through their foreman, stated that the

reason for their request was that they desired to have the evidence given by defendant read to them. The district attorney, while not formally objecting to the reading of this evidence, apparently considered it incumbent on him to call the attention of the court to the fact that such evidence was addressed only to the question of the admission of the confession, and in a discussion between counsel and court that ensued, said to the court: "In other words that was not part of the defendant's case. He did not take the stand in his own behalf or give any testimony on his own behalf." Defendant's counsel excepting to this language, the judge at once fully instructed the jury, in effect, that they must not pay any attention to what was said between court and counsel in the discussion that was being had, and must not consider anything so said as evidence. He then very properly ordered the evidence of the defendant read to the jury and it was read. The jury then retired for further deliberation.

The view of the district attorney that the jury were not entitled to consider the evidence of defendant for any purpose simply because it referred exclusively to the circumstances under which the confession was made was erroneous. The rule is the same as in the matter of dying declarations, stated by Mr. Greenleaf and quoted therefrom in *People* v. *Thomson,* 145 Cal. 724, [79 Pac. 435], as follows: "But after the evidence is admitted, its credibility is entirely within the province of the jury, who, of course, are at liberty to weigh all the circumstances under which the declarations were made, *including those already proved to the judge,* and to give the testimony only such credit as, upon the whole, they may think it deserves." The trial court adopted this view, and, consequently, ordered the evidence read to the jury.

The statement of the district attorney to the court quoted above was, of course, not a proper statement to make in the presence and hearing of the jury. As long as our law relative to a defendant's failure to testify remains as it is, district attorneys cannot be too careful in the matter of refraining from commenting in any way within the hearing of the jury upon such a failure or neglect on the part of a defendant to testify. The statement was, however, clearly enough one made solely to the court, not intended by the district attorney to influence the jury in any way. That it was not to be con-

sidered by them for any purpose they were clearly instructed by the court. In view of these instructions, and in view of the further fact that the extent of the evidence given by defendant was very clearly brought to their attention by the evidence itself, read to the jury without objection of any kind being made by the defendant, it is manifest that the mere statement of fact by the district attorney cannot be held to have been prejudicial.

The foregoing are all the points made by counsel for defendant. We have nevertheless examined the whole record and find nothing therein to suggest that the defendant did not have a fair and impartial trial. The proceedings were apparently devoid of even technical error on the part of the learned trial judge.

The judgment and order denying a new trial are affirmed.

Shaw, J., Sloss, J., Lorigan, J., and Beatty, C. J., concurred.