[L. A. No. 3282. In Bank.—October 2, 1914.]

## GRANTS PASS LAND AND WATER COMPANY (a Corporation), Appellant, v. JOHN BROWN, Respondent.

BOUNDARIES—UNCERTAINTY—AGREEMENT BETWEEN ADJOINING OWNERS AS TO TRUE LOCATION—ACQUIESCENCE BY PARTIES.—Where adjoining proprietors, being uncertain of the true position of the boundary between their lands, agree upon its true location, mark it upon the ground or build up to it, and occupy on each side up to the place thus fixed and acquiesce in such location for a period equal to the statute of limitations, or under such circumstances that substantial loss would be caused by a change of its position, such line becomes, in law, the true line called for by the respective descriptions, regardless of the accuracy of the agreed location, as it may appear by subsequent measurements.

ID.—STATUTE OF FRAUDS—WHETHER APPLIES TO AGREEMENT FOR ESTABLISHING BOUNDARY.—The apparent transfer of land under this rule,

if the agreed line varies from the true line, does not violate the statute of frauds, the reason being that it is a fixing of the line and merely serves to establish the location upon the ground of the line described in the deeds.

ID.—PROOF OF AGREED LOCATION MUST BE CLEAR.—But as it does in fact, so far as the agreed line varies from the true line, affect the ownership of land, the proof of such agreed location should be clear.

ID.—PURPOSE OF BOUNDARY AGREEMENT AS AFFECTING ITS VALIDITY.— And if the line is located and agreed to, not for the purpose of settling an uncertainty in the minds of the parties as to the position of the true line upon the ground, but to take land from one owner and transfer it to the other, or without the intent to fix the true line, such agreement is invalid and does not change the legal boundary nor affect the title of either party to the land which he previously owned. In such case the title can be changed only by adverse possession for the period of limitation.

ID.—AGREEMENT AS TO PART OF LINE—EXTENSION BY IMPLICATION OR CONSTRUCTION.—The doctrine as to the establishing of boundaries by agreement and acquiescence applies only to the lines so far as marked or fixed by the agreement. The actual location is the thing to which the parties must agree, and where such agreement extends to only a part of the line, it cannot be extended by construction or implication, so as to embrace a part of the bounds which were not considered or included in the agreement and as to which there was no agreement.

ID.—REPRESENTATION AS TO BOUNDARIES—ESTOPPEL OF SUCCESSOR IN INTEREST.—Where one purchases land in reliance upon the statements of an adjoining proprietor as to the location of the boundary line between the properties, and enters into possession of the tract so purchased, the adjoining proprietor and his subsequent successor in interest are estopped to dispute the location of the boundary as thus represented.

APPEAL from a judgment of the Superior Court of Los Angeles County.   J. P. Wood, Judge.

The facts are stated in the opinion of the court.

J. W. McKinley, and W. R. Millar, for Appellant.

J. B. McLaughlin, and Earl Rogers, for Respondent.

SHAW, J.—The plaintiff appealed from the judgment within sixty days after its entry and brings up the evidence in a bill of exceptions.

The complaint states a cause of action against the defendant to quiet title to 1198.67 acres of land, constituting a part of a large Mexican grant known as the Rancho Providencia. The defendant is the owner of land adjoining said ranch along a part of the easterly and southerly sides thereof. The dispute between the parties concerns the location of the boundary line between the two tracts. The plaintiff proved a record title from the government to the land it claims, extending to the easterly and southerly lines of the Providencia Rancho. The defendant established a title of record from Ramon Villa to the adjoining parcels of land described as the southeast quarter of the southeast quarter and lots 2, 3, 4, and 5 of section 26, township 1 north, range 14 west, San Bernardino base and meridian. Villa obtained title to all these parcels from the government under the homestead laws. The southeast quarter of the southeast quarter contains forty acres. It does not adjoin the rancho and its lines are not involved. According to the government survey and patent to Villa lot 2 contains 25.43 acres, lot 3, 26.10 acres, lot 4, 34.65 acres, and lot 5, 19.83 acres, amounting in all to 106.01 acres. These fractional subdivisions of the section are caused by the irregular course of the rancho lines, which cut off the remaining portions of the sectional subdivisions indicated by the lot numbers.

The parcel of land in controversy lies wholly within the Providencia Rancho, according to the government surveys under which both parties derive title. If those surveys control, the land in dispute belongs to plaintiff. The defendant claims title to this parcel by virtue of an alleged agreement of the adjoining owners as to the location on the ground of the surveyed division lines, followed by possession up to the agreed line and acquiescence therein for many years. He also claims title by adverse possession and by virtue of an alleged estoppel against the plaintiff's predecessors in interest. The defendant never paid taxes except upon assessments of the lands describing the same as in the patent to Villa and containing the number of acres of each lot according to the government survey. This acreage and description would not include the parcel in controversy. To meet this objection to his adverse possession the defendant invokes the doctrine that in a case where such agreed line varies from the true line as surveyed, a conveyance or payment of taxes according to the

original description will be taken to extend to the agreed line, and to cover, or exclude, as the case may be, the intervening land. (*Price* v. *De Reyes,* 161 Cal. 484, 490, [119 Pac. 893] ; *Young* v. *Blakeman,* 153 Cal. 483, [95 Pac. 888].) In virtue of this rule he argues that his tax payments covered the disputed parcel of which he claimed to have possession at the time. It will be seen, therefore, that the claim of adverse possession must fall, unless there was a line established by agreement, possession, and acquiescence, as alleged, and sufficient to comply with the above stated rule. The court found generally in favor of all the defenses asserted.

The rule regarding agreed boundaries is stated in *Young* v. *Blakeman,* as follows: ''When such owners, being uncertain of the true position of the boundary so described, agree upon its true location, mark it upon the ground, or build up to it, occupy on each side up to the place thus fixed and acquiesce in such location for a period equal to' the statute of limitations, or under such circumstances that substantial loss would be caused by a change of its position, such line becomes, in law, the true line called for by the respective descriptions, regardless of the accuracy of the agreed location, as it may appear by subsequent measurements.'' The apparent transfer of land under this rule, if the agreed line varies from the true line, is held not to violate the statute of frauds, the reason given being that it is a fixing of the line and merely serves to establish the location upon the ground of the line described in the deeds. (*Sneed* v. *Osborn,* 25 Cal. 630.) But as it does in fact, so far as the agreed line varies from the true line, affect the ownership of land, it has been well said that the proof of such agreed location should be clear. (*McNamara* v. *Seaton,* 82 Ill. 500.) And if the line is located and agreed to, not for the purpose of settling an uncertainty in the minds of the parties as to the position of the true line upon the ground, but to take land from one owner and transfer it to the other, or without the intent to fix the true line, such agreement is invalid and does not change the legal boundary nor affect the title of either party to the land he previously owned. (*Lewis* v. *Ogram,* 149 Cal. 505, [117 Am. St. Rep. 151, 10 L. R. A. (N. S.) 610, 87 Pac. 60].) In such a case the title can be changed only by adverse possession for the period of limitation.

Applying these rules the evidence does not support the finding that the division line was fixed as claimed. In the year 1877, David Burbank owned the Rancho Providencia, containing thousands of acres. Its lines and those of the government sections adjoining its southerly and easterly lines had been surveyed by William P. Reynolds, government surveyor. Villa in that year settled on the lots in section 26 as a homestead claim. We know of no case where a tract proportionally so large has been included by this means. The subjoined map shows the extraordinary character of the claim here made.

The shaded portions of the map represent the 146.01 acres of land embraced in Villa's homestead entry. The lines from the point marked ''P4'' to that marked ''P5,'' and thence to ''P6,'' at the oak tree, represent the lines of the government survey of the southerly and easterly lines of the rancho and the true division lines between the rancho and the homestead entry. The lines running from A, through B, C, and D, to E, represent the lines which it is claimed were agreed upon by Villa and Burbank as the division lines. The land included within the lines so extended is very rough, brushy, and mountainous. A small valley lies across it opening toward the northwest and extending from the westerly part of lot 4 across the so-called agreed line at the point marked ''C.'' In this valley there are about twenty acres of comparatively level

land.   The mountains on each side near the point "C" are
very steep and rough.   A small stream runs down the valley
at times and a few rods northeast of "C" is a spring.   The
fence referred to in the testimony is indicated by the line
interspersed with crosses and it extends along that part of the
line only and no farther, being only some one thousand seven
hundred feet in length.   The distance from the point "B"
to "D," along the claimed line is about three thousand five
hundred feet.

The most 'that can be said in favor of the defendant on the
subject of the agreed line is that the evidence tends to show
that an agreement was made about the year 1877 between
Villa and Burbank fixing the line for about half the distance
from the point "B" to the point "D," across the said valley,
that a brush fence was built across the valley which, with the
adjacent steep mountain sides, served to turn stock, and that
Villa and his successors thereafter occupied and claimed the
land composing the valley and its slopes.   No agreement was
made as to the other parts of the boundaries.

It may be doubted whether in any case so large and irreg-
ular a parcel as that shown on the map, departing so far from
the true line, could be acquired by an adjoining owner, under
the law as to agreed boundaries placed or made with intent
to mark or fix the true line.   The map itself seems almost
conclusive to the effect that they were not fixing a true line,
but only placing a boundary for occupancy and not for title.
But we need not decide the question.   The doctrine applies
only to lines so far as marked or fixed by the agreement.   The
actual location is the thing to which the parties must agree.
Where such agreement extends to a part, only, of the line, it
cannot be extended by construction or implication, so as to
embrace a part of the bounds which were not considered or
included in the agreement and as to which there was no agree-
ment.   The part of the line which was fixed does not inclose
the parcel now claimed, but only runs along a part of one
side thereof.   This defense, therefore, must fail, and that
based upon adverse possession also fails because of the failure
to show payment of taxes by the defendant on the land within
the real bounds of the Providencia Rancho.

By way of estoppel the defendant alleged and the court
found that when he was about to purchase the land from Villa
he enquired of the plaintiff's predecessor in interest, who was

then the owner of the lands claimed by plaintiff, and was informed by said predecessor that the northern and western boundary lines as indicated by the fence, and certain monuments and trails extending in each direction therefrom, were the boundary lines between the premises then owned by Villa which the defendant was then about to buy, and the lands then owned by said predecessor in interest; that believing and relying upon said statements, the defendant bought the said lands from the said Villa and paid the purchase price thereof and entered into possession and that he has ever since occupied and claimed the same up to the line said to be the true line by said predecessor, being induced to purchase by the said representations of the said predecessor.

The evidence was sufficient to show that these allegations were true. It appeared that Brown had visited the premises in company with Villa, before buying, and that they had gone over the agreed line as heretofore mentioned and as shown on the map and had also examined the trails leading therefrom to the corners as shown on the map at the points "B" and "C." Thereupon the defendant went to Pomeroy, the said predecessor, told him that he was about to buy the Villa lands but was unwilling to do so without a survey, because he was not certain of the statements of Villa as to the true line, stating to him where Villa had represented the lines to be; whereupon Pomeroy informed him that no survey was necessary, that the lines shown to him by Villa were the true lines of the respective tracts and that there would be no trouble if he should purchase the property, and that in reliance upon this assurance he bought and paid for the property and took possession thereof. It is true that Pomeroy denied these statements and declared that this line was not the true line and that he had never stated to any one that it was the real boundary; but this merely raises a conflict in the evidence as to which, whatever may be our opinion in regard to the truth, we are bound by the decision of the court below in favor of Brown. The lines thus admitted by Pomeroy extended to the corners and there intersected the projected end lines of the Villa homestead claim. Thus it would include the parcel now in dispute. Under these circumstances we think the estoppel is established. (*Stanley* v. *Green,* 12 Cal. 148.) Inasmuch as Brown immediately took possession of the parcel and has remained in possession ever since his purchase,

the plaintiff, claiming under Pomeroy, was put upon notice of the facts and must be held to be charged with notice of the rights of Brown against Pomeroy by reason of the estoppel.

The judgment is affirmed.

Sloss, J., Lorigan, J., Henshaw, J., Melvin, J., and Sullivan, C. J., concurred.