[L. A. No. 4223. In Bank.—June 10, 1918.]

## GISELDA SCHIAPPA PIETRA MARCONE et al., Respondents, v. RICHARD H. DOWELL, Appellant.

Quieting Title—Exception in Deed to Plaintiff's Predecessor—Evidence—Burden of Proof.—Where, in an action to quiet title to a lot of land, the plaintiff claims title through a deed to his predecessor, describing by metes and bounds a larger tract, including the lot in question, but excepting from the conveyance "that portion of land . . . mortgaged heretofore," by a mortgage, which is referred to only by its date, and the statement that it was recorded in the county recorder's office, but the date and specifica-

tion of the record is not given and the mortgage is not produced or identified, the burden is cast upon a defendant, who shows no right or title in himself (except such as he may have acquired by seizing and fencing the land), of showing that the land sued for is within the area excepted from the deed to plaintiff's predecessor.

ID.—BOUNDARIES—UNCERTAINTY OF EXCEPTION IN CONVEYANCE.—Where a deed conveying land by metes and bounds excepts from the conveyance a portion mortgaged, the mortgage being referred to by a date and the specification that it was recorded, if there is no such mortgage or record, the exception falls for uncertainty, and the deed carries the title to all the land included within the described boundaries.

ID.—EVIDENCE—BURDEN OF PROOF AS TO LAND EXCEPTED.—The description by metes and bounds in the deed to plaintiffs' predecessor gives at least color of title which, as against defendant's mere title by seizure, is good, and throws upon him the burden of showing that the land in controversy was within the area sought to be excepted.

ID.—DOUBLE DESCRIPTION—REJECTION OF SECOND DESCRIPTION.—The rule that where land is described in a deed as the whole of a certain farm, and is again described by courses and distances which do not embrace the whole farm, the latter description will be rejected and title to the whole farm will pass by the deed, has no application to a case where a description by metes and bounds in which there is no uncertainty is followed by the words, "being the same premises whereon" the grantor and his family now reside, because the reference to the grantor's residence in such case is obviously merely a further identification of the premises and not another description, and in an action to quiet title the plaintiff deraigning title through such a deed was not required to prove what land had been occupied by the grantee and his family.

ID.—LOCATION OF BOUNDARY BY AGREEMENT—NATURE OF PROOF REQUIRED.—Proof of a mutual agreement between adjoining land owners, fixing a common boundary line, must be clear, and the mutual acquiescence should be shown to have existed for a period greater than the statute of limitations, or under such circumstances that substantial loss would be caused by a change.

ID.—ESTATES OF DECEASED PERSONS—DECREE OF DISTRIBUTION—DESCRIPTION BY METES AND BOUNDS—DISTRIBUTION OF ALL LANDS OF DECEDENT.—Where in the distribution of the estate of a decedent the decree distributes certain lands owned by the decedent, describing them by metes and bounds, and also distributes "all the lands to which the decedent had title at the time of his death," the lands distributed will not be limited by the description by metes and bounds.

ID.—MAPS AND REPORTS OF STREET OPENING COMMISSIONERS—INADMISSIBLE EVIDENCE ON QUESTION OF BOUNDARIES.—On a question of boundaries in an action to quiet title, maps and reports of com-

missioners in a street opening proceeding held inadmissible, not being declarations of any of the parties in interest.

ID.—EVIDENCE—REFRESHING MEMORY.—Maps and reports of commissioners in street opening proceedings, though they may be used as memoranda to refresh the memory of a witness, are not admissible as independent evidence on a question of boundary in an action to quiet title.

APPEAL from a judgment of the Superior Court of Santa Barbara County. Samuel E. Crow, Judge.

The facts are stated in the opinion of the court.

Canfield & Starbuck, for Appellant.

Edward M. Selby, for Respondents.

MELVIN, J.—Defendant appeals from the judgment and from an order denying his motion for a new trial.

The suit was one to quiet title. Appellant contends that in reality it was an action in ejectment; that, as respondents must depend upon the strength of their own title rather than any supposed weakness in that of their adversary, they must establish a perfect chain of title from the holder, admittedly having once owned the property in dispute; that the pretended chain of title upon which plaintiffs rely is broken in two places; and that the court erred in excluding certain testimony proffered by the defendant.

The lot in controversy is 19.5 feet wide and 34.85 feet deep. It fronts on the northwest side of De 'la Guerra Street, in the city of Santa Barbara. The principal controversy in the case was centered around the question whether or not this property, when it was seized by the defendant, belonged to the heirs of Schiappa Pietra.

Defendant's asserted title depends upon the following facts: In 1909 defendant was told by Artura Orena, who owned other property then occupied as a place of business by defendant, that Mr. Orena did not want the land now in controversy and that Mr. Dowell might as well have it as anybody else. Defendant made an examination which led him to believe that the Schiappa Pietra estate had no title to the land. He then fenced the property here in dispute except where the line over which he wished to extend one of the boundaries was covered by a part of a small brick build-

ing. This house stood partly upon the lot which defendant wished to claim and partly upon land which he knew to be a portion of the Schiappa Pietra property. The first fence was torn down by Mr. Parma, agent of the Schiappa Pietras (at least so defendant was informed), but Dowell built a stronger fence in the place of the one destroyed. After building the fence defendant caused a quitclaim deed to the lot to be executed in his favor by Geraldine C. Valde, who, so far as the record discloses the facts, had no interest in the land. This instrument was recorded and defendant caused the lot to be assessed to him, after which he paid taxes on it. After building the fence defendant wrote to Mr. Power, who was familiar with the Schiappa Pietra property and was one of the executors of the will of Leopoldo Schiappa Pietra, that said Power had part of the house on said lot and "it didn't belong on there." The letter was not answered, but about a year later (June 29, 1910), this action was commenced.

It was stipulated that Peter Francis Aubrey owned and occupied certain land, including that here in controversy, in April, 1867, taking under a deed from one Puig. Aubrey conveyed this land in September, 1877, to William Lavies, who, on the same day, agreed with him in writing to reconvey it in one year for a specified price, leaving the grantor meanwhile in possession. This deed of conveyance, however, contained the following language succeeding a description by metes and bounds: "And being the same premises conveyed to said Aubrey by Felipe Puig by deed dated April 8th, 1867, excepting and excluding from this conveyance that portion of land improvements mortgaged heretofore to Bernardo Llata by mortgage dated the 23d day of May, A. D. 1877, and recorded in the Recorder's office of the County of Santa Barbara." It is argued that since the exception was indefinite, it may have included the land now claimed by defendant. This contention will receive attention in another part of this opinion.

On July 2, 1878, Peter Francis Aubrey, without reference to any previous mortgage or to his conveyance to Lavies, granted to Bernardo Llata a lot described as running southeasterly on State Street, from New De la Guerra Street, forty-six feet, more or less, by one hundred feet in depth, and also characterized as "being the same premises whereon the said P. F. Aubrey and family now actually reside." Subse-

quently, in the same year, Bernardo Llata conveyed this land in trust for his creditors to Gaspar Orena, describing it by reference to Aubrey's grant to him. On January 21, 1879, Aubrey confirmed this conveyance by a deed containing substantially the same description as that used in his former deed to Llata. This deed also recited the fact that a certain recorded bond was made and executed by Llata to Aubrey on the date of the former deed, and that "P. F. Aubrey is unable to comply with the conditions recited in said bond." This language is succeeded by the following: "Now therefore in consideration of the premises and of the amount specified in said bond hereby grants unto Gaspar Orena Trustee for the Creditors of Bernardo Llata all his right, etc." On June 9, 1879, the creditors of Bernardo Llata, confirming a sale in trust made for their benefit to Gaspar Orena as the highest bidder, granted the same premises to the said Orena. The description in this deed was substantially the same as in the others, referring to a rectangular piece of property running forty-six feet, more or less, along State Street and one hundred feet along New De la Guerra, and bounded on its other long side by the lands of Moraga.

On November 28, 1882, William Lavies granted to Cayetano Machiavelli the property which had been deeded to said Lavies by Aubrey, referring to the former deed for a full description of the premises. On April 1, 1889, Lavies conveyed the same property by a correction deed to the same grantee. In the deed, after description by metes and bounds, the land was further described as "being the same premises conveyed to P. F. Aubrey by Felipe Puig by deed dated April 8th, 1867, and recorded in Book 'E' of Deeds, p. 588; excepting and excluding from this conveyance that portion of land and improvements conveyed heretofore to Bernardo Llata by P. F. Aubrey by deed dated the 2d day of July, A. D. 1878, and recorded in the Recorder's office of the County of Santa Barbara in Book 'T' of Deeds, p. 65." In April, 1889, Machiavelli conveyed all of the property he had acquired from Lavies to Antonio Schiappa Pietra, expressly excepting the lot conveyed by Aubrey to Llata.

On the 29th of April, 1889, to facilitate the opening of De la Guerra Street, Orena conveyed to the city of Santa Barbara a strip of land twelve feet in width running from State Street along the northwesterly side of the new street

119½ feet. This was described by metes and bounds, and was further designated as "A piece of land with the improvements thereon lying and being situated in De la Guerra street between State and Chapala streets in the city of Santa Barbara, County of Santa Barbara, State of California, as said street was surveyed by Salisbury Haley and as the lines of said portion of De la Guerra street were retraced and surveyed by George F. Wright, City Surveyor of said city, for the Commissioners appointed by the Mayor and Common Council of said city in the matter of opening De la Guerra street between State and Chapala streets in said city." Prior to that time Antonio Schiappa Pietra, describing himself as Machiavelli's successor in interest, had conveyed to the city a similar strip twelve feet wide, commencing 119½ feet from State Street. This was described by metes and bounds and contained the same reference to Wright's retracing that was employed in the later deed to the city which Orena executed.

After the introduction in evidence of these two deeds last described, defendant's counsel sought to introduce two reports and accompanying maps, being the reports of two boards of commissioners to open De la Guerra Street, one made in 1885 and the other in 1888, the maps in one case having been made by City Surveyor Barker and in the latter by his successor, Mr. Wright. Defendant wished to show that the earlier proceeding had been abandoned; that the subsequent report had been substantially identical with its predecessor; that it was used in the proceedings which culminated in the opening of the street; and that the report indicated the line between the properties of Orena and Schiappa Pietra as 119½ feet southwest from State Street and the existence of a fence on this line. These reports and maps were not admitted in evidence.

The city block book showed the depth of Orena's lot from State Street as 119½ feet, but the county block book, made in 1889, followed the description by metes and bounds contained in the grant from Aubrey to Llata in 1878.

After Antonio Schiappa Pietra died, his property was distributed to his brother Leopoldo by a decree entered December 7, 1896. While this decree contained the usual general provision distributing all property therein described, "or otherwise," and any property not then known or discovered

which might belong to the estate, in the specific description of the land in block 175, the line on De la Guerra Street was described as running 330.50 feet to the corner of Gaspar Orena's land; thence northerly along Orena's line 34.85 feet; and thence along the northerly line of Orena's lot 119.50 feet to State Street. This description involved a depth of 119.50 feet for Orena's land and a width of 34.85 feet. The difference between this area and the lot one hundred feet in depth acquired by Orena from Llata's creditors accounts for the tract here in dispute which defendant sought to acquire by fencing it, having it assessed to him, and paying taxes upon it.

In 1906 De la Guerra Street was paved and Mr. Orena was assessed for the improvement on a frontage of 119 feet. He refused to pay for more than one hundred feet. The agent for Mr. Schiappa Pietra said he did not know whether the land belonged to his principal or not. He paid for the frontage assessed to Mr. Schiappa Pietra, excepting the nineteen and one-half feet, but subsequently, and before the time when a lien might be declared, he paid the balance.

In addition to the record proof which was offered, plaintiffs showed that at one time there had been a fence perpendicular to De la Guerra Street and distant one hundred feet southwesterly from State Street, and that in 1910 Mr. Orena constructed a brick building to the line of this fence.

Upon this record appellant contends that plaintiffs have made out no complete record title—that "it was twice broken and the two breaks were neither of them repaired." With this contention we are unable to agree.

The first "break" specified is the exception of the lot mortgaged to Llata, and as no such mortgage was produced at the trial, appellant contends that it is impossible to determine what was conveyed. It will be noticed that in Aubrey's conveyance to Lavies the description by metes and bounds included the land in question, and that the mortgage applying to the excepted property was described by date and by the specification that it was recorded. If, in fact, there was no such mortgage or record, then the deed carried title to the lot now in dispute. (*Los Angeles and Arizona Land Co.* v. *Marr, ante,* p. 243, [173 Pac. 83].) The description by metes and bounds in the deed to the predecessor of plaintiffs gives at least color of title which as against defendant's mere

title by seizure is good, and throws upon him the burden which he did not meet of showing that this land was within the area sought to be excepted. This principle is well stated in the quotation which respondents make from *Bernhardt* v. *Brown,* 122 N. C. 587–590, [65 Am. St. Rep. 725, 29 S. E. 884, 885], as follows: "The defendants except because 'five thousand acres being excepted from the grant of 1795 under which the plaintiffs claim, the burden is on the plaintiffs to show that the land sued for is not the excepted part.' The law is well settled otherwise. 'The *locus in quo* being within the boundary of plaintiff's deed and defendant claiming under exceptions in said deed, it is clear that it is incumbent on him to bring himself within the exceptions by proof.' (*Roan Mountain Steel & Iron Co.* v. *Edwards,* 110 N. C. 353, [14 S. E. 861]; *Gudger* v. *Hensley,* 82 N. C. 481.)" True, that was a case in which both claimed from a common title, but that fact would have been a stronger reason for the rule sought to be invoked than any existing here. In this case defendant connects himself with no outstanding title, but asserts only such rights as may arise from the taking and fencing of the lot. He can have no possible right to the property unless it belonged to someone other than the plaintiffs. They have shown a sufficient title *prima facie* to put upon him the burden of proving that the lot here in controversy came within the indefinite exception in Aubrey's deed to Lavies.

Moreover, in 1882 Lavies conveyed to Machiavelli by deed which referred to his deed from Aubrey; and in a correction deed made in 1889 confirmed the grant by a deed excepting land conveyed to Llata (not mortgaged but conveyed) by a recorded deed of later date than the mortgage specified in Aubrey's deed to Lavies. The land included in the deed from Aubrey to Llata was only one hundred feet deep from State Street—afterward the Orena property. Clearly, therefore, Lavies intended to convey the lot here involved to Machiavelli. Llata, in his conveyance to Orena, only claimed a lot one hundred feet in depth. Aubrey conveyed to Orena his rights under the contract to repurchase from Llata (asserting no equity under any mortgage), describing a lot only one hundred feet in depth. Machiavelli possessed and occupied the land in dispute and his successor, Schiappa Pietra, through the latter's agent, collected rent for a building ad-

mittedly occupying a part of the lot which Dowell could not fence completely upon the lines of his intended occupation because it was there. This agent testified that Machiavelli occupied this very building as a shop for several years before he sold it to Schiappa Pietra. With such proof of record title we think defendant is not benefited by the mere failure to account for the mortgage specified in the earlier deeds.

The second alleged "break" in the title of plaintiffs which defendant's counsel specify arises as follows: In the deed from Machiavelli to Schiappa Pietra, executed in April, 1889, was contained a description which, if unqualified, would have included this land. But this description was qualified by an exception of the land conveyed by Aubrey to Llata by the deed of July, 1878. It is conceded that the description in the latter deed by metes and bounds would exclude the lot now claimed by Mr. Dowell, but appellant's counsel insist that there is a "double description" due to the words following the indicated courses by metes and bounds, "being the same premises whereon the said P. F. Aubrey and family now actually reside," and it is contended that the latter designation controls the description by metes and bounds. The contention was made that in order to justify their title under this deed, the plaintiffs should have proven just what land had been so occupied by Aubrey and his family, and that their failure so to do makes another "break" in their chain of title. In this behalf defendant's counsel quote the following language from 2 Devlin on Deeds, section 1018: "If the land is described as the whole of a certain farm, and is again described in the deed by courses and distances, which, however, do not embrace the whole farm, this latter description will be rejected, and the title to the whole farm will pass by the deed." The rule invoked has no application, because the reference to the fact of Aubrey's residence is obviously merely a further identification of the premises and not another description. There is no uncertainty in the description by metes and bounds and no suggestion that the place of Aubrey's residence differed from the property of which the measurements were given. In other words, this is not a case of uncertainty in the description.

The deeds to the city by which Orena conveyed a strip of land 119½ feet in length, extending from State Street along De la Guerra, and Schiappa Pietra transferred a similar

strip beginning where the other ended, undoubtedly furnish evidence of some uncertainty in the minds of the grantors regarding their respective holdings, but these conveyances do not prove a mutual agreement to fix the common boundary between their properties. In the first place, proof of such agreed location of a line should be clear, (*Grants Pass Land & Water Co.* v. *Brown,* 168 Cal. 456, [143 Pac. 754]), and the mutual acquiescence should be shown to have existed for a period greater than the statute of limitations, or under such circumstances that substantial loss would be caused by a change. (168 Cal. 459, [143 Pac. 756].) Whatever might be said of the conclusiveness of these deeds as between the city and the grantors in any dispute involving title to the property conveyed to the municipality, there was clearly no agreement by the neighbors that the true line between their lots after the opening of the street was 119½ feet from State Street, because Mr. Orena refused to pay the assessment on that extent of frontage while the agent for the owner of the adjoining property expressed doubt on the subject—but paid the bill.

The decree of distribution in the *Estate of Schiappa Pietra,* while it describes the land of Mr. Orena in accordance with defendant's contention, also distributes, in general language, all of the land to which the decedent had title at the time of his death. Therefore, the description by metes and bounds in the decree would not defeat any just claim on the part of plaintiffs, their title of record being otherwise good.

There was no error committed by the court in excluding from the record the reports of street commissioners and the accompanying maps. These were not muniments of title. The surveyor who made the original map (of which the other was apparently a tracing) testified that he could not say that he measured the lines on the ground for the purpose of making the map. He made no field-notes. He did not remember whether or not he intended that the Orena lot should take in a portion of the old building to which reference has been heretofore made. Furthermore, it was in evidence that the report was not made by the surveyor. The map and the first report were not used, because the proceedings were abandoned, and there is no evidence that either was ever called to the attention of the property owners. The second map does not purport to have been based upon an original survey, and

although the second report was made the basis of the assessment, it could not change the title to the property assessed by merely designating certain limits and boundaries of properties as showing the holdings of various individuals. The maps and reports were not declarations of any of the parties in interest and were not binding upon them. They were clearly not admissible as records of title. (*Payne* v. *English,* 79 Cal. 540–547, [21 Pac. 952].)

It was argued that the original map and the reports should have been admitted as memoranda to refresh the memory of Mr. Barker, the surveyor. Such memoranda may be used by a witness to refresh his memory, but may not be admitted as independent evidence. (Code Civ. Proc., sec. 2047; *Baum* v. *Reay,* 96 Cal. 462–465, [29 Pac. 117, 31 Pac. 561]; *Estate of Flint,* 100 Cal. 391–399, [34 Pac. 863]; *Estate of Benton,* 131 Cal. 472–480, [63 Pac. 775].)

No other alleged errors require discussion or analysis.

The judgment and order are affirmed.

Shaw, J., Sloss, J., Wilbur, J., Richards, J., *pro tem.,* Victor E. Shaw, J., *pro tem.,* and Angellotti, C. J., concurred.

Rehearing denied.