[S. F. No. 8789. In Bank.—October 8, 1919.]

## F. C. STANIFORD, Trustee, Appellant, v. WILLIAM T. TROMBLY et al., Respondents.

[1] BOUNDARIES—ARBITRARY SELECTION—REVERSAL OF JUDGMENT.—In an action to quiet title between adjoining land owners concerning the location of their boundary line, a judgment awarding defendants about one-half of the disputed area, which was reached. by treating a fence not built upon an agreed line, as an agreed boundary for its full length, and then arbitrarily selecting boundaries extending from the fence to the true original line, must be reversed.

[2] ID.—ACQUIESCENCE IN EXISTENCE OF FENCE—INSUFFICIENT AGREEMENT OF ACCEPTED BOUNDARY LINE.—The mere acquiescence in the existence of a fence and the occupancy of the land up to it does not amount to an agreement that it was on an accepted boundary line.

[3] ADVERSE POSSESSION—INSUFFICIENCY OF EVIDENCE.—A finding of adverse possession is not supported by facts bringing the occupancy within the purview of section 325 of the Code of Civil Procedure, where there is no evidence of substantial inclosure of the disputed tract or payment of taxes.

[4] BOUNDARY—FENCE NOT TRUE LINE—ABSENCE OF ESTOPPEL.—An adjoining owner is not estopped from asserting that a fence not built upon an agreed boundary line was not the true boundary, by the mere failure to dispute the use of the land north of the fence, where there was no fraud or concealment and both owners were ignorant of the true line.

APPEAL from a judgment of the Superior Court of Santa Clara County. P. F. Gosbey, Judge. Reversed.

The facts are stated in the opinion of the court.

Hugh K. McKevitt, Royal E. Handlos and W. H. Hyatt for Appellant.

Robert R. Syer, C. L. Witten and H. D. Tuttle for Respondents.

MELVIN, J.—Appeal by plaintiff from a judgment against him in a\suit to quiet title to certain land in Santa Clara County.

It is conceded that plaintiff has record title to 565 acres and
defendants to two hundred acres, and that the two tracts ad-
join at the south of the land of defendants and the north of
that of plaintiff. Defendants claim about 165 acres more than
their record title by reason of a boundary fence and an alleged
agreement between the parties that said fence should be the
true line separating the parcels of land. Defendants also
pleaded prescription and estoppel. The whole controversy
arises over the boundary line between the two parcels of land.
D. C. Riddell and Speer Riddell were the predecessors in in-
terest of plaintiff in the ownership of the land lying south of
the tract in dispute, and Peter Trombly was the predecessor
in interest of plaintiff in the ownership of the acreage to the
north of the property in dispute.

In the year 1876, 1877, or 1878, as the court found, because
the stock owned by one or the other of the possessors of
these neighboring properties would wander over the land of
the other, causing trouble or annoyance to the owner of the
land and the owner of the cattle, D. C. Riddell and Peter
Trombly agreed to build a fence to prevent the straying of
the stock. Riddell was to build half and Trombly half of the
fence. In accordance with this arrangement the fence was
built. The court found that "Said fence was not built upon
an agreed boundary line between the Riddell tract and the
Trombly tract to settle any dispute, uncertainty, or contro-
versy arising over or out of the true location of the dividing
line between the said two tracts of land." The fence in ques-
tion extends from a point at the southeast corner of the land
described in the original deed to Trombly, but instead of fol-
lowing the true boundary between the two tracts, as they
then existed, ran far to the southwest thereof. It did not
extend all the way across the property of Riddell, but to a
natural barrier, namely, a creek. Beyond the fence the con-
formation of the land and the thick growth of underbrush
were sufficient to turn cattle. In their answer defendants as-
serted that the agreed boundary line followed the fence
throughout its entire length, and was extended in the same
direction to the southwesterly line of plaintiff's property. If
this claim had been sustained, it would have resulted in giving
to defendants a triangular strip of land south of the true line
between the original holdings of the predecessors in interest
of these litigants and extending some distance to the south-

west of the original Trombly rancho, because the land of plaintiff subtended by the supposed agreed boundary extends farther west than does that of defendants.

Notwithstanding the finding that the fence was not built upon a line agreed upon as a boundary at the time of its construction, but that it was intended to turn cattle, the court also found that the true boundary line was uncertain when the fence was built; that after its construction for a period of thirty years neither Riddell nor any of his successors made any protest against "the fence existing where it was thus built"; that Trombly and his successors had, during all of that period, occupied and cultivated part of the land immediately north of the fence; that their possession was open and well known to plaintiff; that no objection of any sort was made; and that "by reason of such nonobjection of said Riddell and his successors in interest the said Riddell and those claiming under him acquiesced in said fence as being the boundary line between the properties owned respectively by the said Peter Trombly on the one side and the said De Witt C. Riddell on the other side." It was found also that since 1867 plaintiff's predecessors and plaintiff had paid taxes on land described as "bounded on the north" by the lands of defendants or their predecessors [naming them]. Conversely, the assessments paid by defendants and their predecessors were on land "bounded on the south" by the property of Riddell or one of his successors, designated by name. But in every assessment the Trombly land was described as containing two hundred acres and the Riddell property as having an area of 565 acres.

In its judgment the superior court did not accede to all of the demands of defendants. It was found that the defendants were entitled to about one-half of the disputed area, and this result was reached by treating the fence as an agreed boundary for its full length and then arbitrarily selecting boundaries extending from the fence to the true original line between the properties and following said line to the northeasterly end of the fence at the southeast corner of the land of defendants. The description of the parcel to which defendants were found to be entitled follows the fence to its southwesterly end at "the center of a creek," and "running thence down the center line of said creek in a northerly direction to Murphy Canon and creek; running thence along the center of Murphy Canon and creek in a westerly direction to where

Murphy Canon and creek crosses the north line of the Riddell Ranch; and running thence N. 76° 37′ E. to the place of beginning.''

[1] The judgment must be reversed, if for no other reason, because of these arbitrarily selected boundaries. But there is another and stronger reason for reversal. The finding that the fence was not built to establish the line between the properties is supported by the evidence. [2] The mere acquiescence in the existence of the fence and the occupancy of the land to the north of it would not amount to an agreement that it was on an accepted boundary line. And the large area of the irregular parcel subtended by the fence and the creek to which it extended would go far to indicate that the builders of the fence were fixing a line ''for occupancy and not for title.'' This case greatly resembles in its facts (except those pertaining to estoppel) *Grants Pass Land and Water Co.* v. *Brown,* 168 Cal. 456, [143 Pac. 754]. In that case, as in this, it was shown that a fence had been built to turn cattle; that thereafter one of the builders of the fence occupied the land set off by the fence from his neighbor's property; and that no agreement had been made as to the other parts of the boundaries. Mr. Justice Shaw, who wrote the opinion of the court, used the following language:

''It may be doubted whether in any case so large and irregular a parcel as that shown on the map, departing so far from the true line, could be acquired by an adjoining owner, under the law as to agreed boundaries placed or made with intent to mark or fix the true line. The map itself seems almost conclusive to the effect that they were not fixing a true line, but only placing a boundary for occupancy and not for title. But we need not decide the question. The doctrine applies only to lines so far as marked or fixed by the agreement. The actual location is the thing to which the parties must agree. Where such agreement extends to a part, only, of the line, it cannot be extended by construction or implication, so as to embrace a part of the bounds which were not considered or included in the agreement and as to which there was no agreement. The part of the line which was fixed does not inclose the parcel now claimed, but only runs along a part of one side thereof. This defense, therefore, must fail, and that based upon adverse possession also fails because of the failure

to show payment of taxes by the defendant on the land within the real bounds of the Providencia Rancho."

The last sentence quoted applies to this case because defendants and their predecessors paid taxes on property comprising but two hundred acres (the amount of land called for in their deeds), and appellant and his predecessors in interest paid taxes on 565 acres, which must have included the land here in dispute. The defendants, therefore, do not hold title by adverse possession.

The respondents seem to rely principally upon the doctrine of estoppel as applying to the appellant. They assert that plaintiff is estopped to deny their title to the land awarded to them by the judgment because the court found (the finding being No. 10) that immediately after the building of the fence Trombly began using the land in the awarded area for raising grain and pasturing stock; that he and his successors since that time have been in the open, notorious, exclusive possession of that space; that Trombly divided this land into fields by cross-fences; that he planted and replanted a vineyard; that he and his successors occupied a dwelling on the disputed strip; that an orchard was planted on this part of the property; that Riddell and his successors had full knowledge of the foregoing facts; and at no time did they assert ownership in the disputed tract until this suit was instituted. We are compelled to construe this finding in connection with others which are, in substance, that it is not true that on January 19, 1894, De Witt C. Riddell was seised in fee of that part of the disputed area which the court awarded to defendants, and that he did not convey that particular parcel by his deed of said date. To sustain these findings there must be evidence that the estoppel had become effective prior to the date of the deed. The court also found that upon the trial of the action it was conceded by the parties thereto that from March 12, 1864, to November 9, 1881, Speer Riddell and De Witt C. Riddell each had record title to a half interest in the Riddell ranch, including the property in dispute; that from November, 1881, the title was in Speer Riddell until his death in 1886; that the decree distributing this property as part of his estate to De Witt C. Riddell was made on September 13, 1887; and that the record title was in De Witt C. Riddell until he and his wife made a deed to Frank C. Staniford, as trustee, on January 19, 1894. Appellant insists,

therefore, and, we think, correctly, that whatever estoppel may be claimed in favor of respondents must be shown to have been created against both the Riddells, if occurring prior to November, 1881; against Speer Riddell alone, if occurring between November, 1881, and September, 1887, and against De Witt C. Riddell alone only after the last-named date, which was the date the ranch was distributed to him as devisee under the will of his kinsman.

Some of the supposed elements of estoppel are not supported by the evidence. Trombly did not (as finding No. 10 specifies that he did) begin using the disputed area after the building of the fence. The Trombly residence on that territory had been occupied since 1873, and the fact that the fence was built, as found by the court, to restrain cattle would indicate that the space north of it was already in use as pasture for Trombly's cattle.

There is no evidence that hay was raised on the triangular strip of land prior to 1894, or that Peter Trombly cultivated grain thereon. One witness testified that his father as a renter put in grain on the *Riddell* place, *south* of the fence. Our attention has been called to no other testimony regarding the planting of grain.

[3] The finding of adverse possession is not supported by facts bringing the occupancy within the purview of section 325 of the Code of Civil Procedure. There is no evidence of substantial inclosure of the disputed tract or the payment of taxes. Such occupancy as was shown would not support the finding of an adverse possession, and, upon the same principle, would not suffice to estop plaintiff from claiming possession under his deed.

There is evidence that there were cross-fences on the place when Trombly went there, but no showing that he built any or that any such fences were built prior to 1894.

The evidence with reference to the vineyard indicates that it was planted after 1894.

No testimony has been called to our attention which would justify the finding that an orchard had been planted on any part of the disputed territory.

Appellant concedes the long occupancy of the house by the Trombly family; the demolition and reconstruction of the barn found there when they first went on the land; and that

the Riddells had full knowledge of all that their neighbors (who were their intimate friends) were doing.

Regarding that part of finding No. 10 that Riddell did not at any time after the fence was built assert ownership of the land to the north thereof, appellant insists that the record fails to show any denial of his ownership prior to 1894, and that, therefore, he was not called upon to make any such assertion.

In view of the finding that the fence along the south line of the disputed territory was not built upon an agreed boundary line, the estoppel, if any exists, must have been created by declarations or conduct and not by contract. True, there was testimony to the effect that at the time of the construction of the fence the builders declared it to be a boundary fence, but evidently the court did not accept that version of the reason for its construction. The real question, therefore, is whether or not the mere failure to dispute the right of the Tromblys to the use of the property north of the fence amounted to conduct which, prior to 1894, estopped the plaintiff's predecessor or predecessors in interest from claiming title to it. That the Riddells and the Tromblys were both ignorant of the true line between their properties is very apparent, but there is nothing in this record disclosing any false representation or concealment of material facts by plaintiff which misled his neighbors on the north to their disadvantage. The location of the residence was an established fact. The use of some of the land for grazing purposes was also an established fact. The ascertainment of the true line was equally within the power of the owners of both tracts, but their mutual or common ignorance continued for years. [4] There was an absence of the essential elements of estoppel, namely, false statements or concealments, or conduct amounting to false statements or concealments, with reference to the boundary made by one having knowledge, actual or virtual, of the facts, to one ignorant of the truth with the intention, resulting in consummation, that he should act upon such false statements or concealments or equivalent conduct. (Bigelow on Estoppel (edition of 1913), 603 et seq.; *Boggs* v. *Merced Mining Co.*, 14 Cal. 279–367; *Stanley* v. *Green*, 12 Cal. 148; *Grants Pass Land and Water Co.* v. *Brown*, 168 Cal. 456, [143 Pac. 754].)

The decision of the superior court is not supportable, therefore, upon the ground of estoppel.

Judgment reversed.

Shaw, J., Lennon, J., Wilbur, J., Olney, J., Lawlor, J., and Angellotti, C. J., concurred.

Rehearing denied.