[Civ. No. 3204. Fourth Dist. Nov. 8, 1943.]

F. A. DRAPER et al., Respondents, v. E. B. GRIFFIN, Appellant.

Newton M. Todd and Fred A. Watkins for Appellant.

Charles D. Warner for Respondents.

MARKS, J.—Plaintiffs brought this action to quiet their title to Lot 15, Section 34, Township 1 South, Range 8 West, S. B. B. & M., in San Bernardino County. Defendant's answer interposed several defenses but we are only concerned with one here, that of an agreed boundary line. The trial court found against this defense, quieted plaintiffs' title to all of Lot 15, and defendant has appealed. The sole ground urged for a reversal of the judgment is that the finding against there being an agreed boundary line between the properties of the parties, under an agreement between former owners, is contrary to all of the evidence in the case.

Prior to August 16, 1937, Lawrence M. Lowry, and perhaps Della B. Lowry, his wife, were the owners of Fractional Lot 2 and Lot 15 in the subdivision in question. A map of the tract had been duly recorded in San Bernardino County, subdividing it into acreage lots. No measurements of the dimensions of these lots appear on what purports to be a copy of the map we have before us although the trial court found that measurements and distances appear on the recorded map. Both lots were farmed by Mr. Lowry who had not had them surveyed. There was nothing on the ground to indicate the dividing line between the two lots.

Fractional Lot 2 adjoins Lot 15 on the north. A road which runs from northeast to southwest forms the northern boundary of Lot 2 so that its east boundary is longer than its west boundary. On August 16, 1937, Mr. and Mrs. Lowry deeded Fractional Lot 2 to Anna E. Humphrey and A. Elizabeth Lane, whom we will assume were defendant's predecessors in interest although proof of the chain of title is lacking. The deed called for "4 or more acres."

Mrs. Humphrey and Mrs. Lane went into possession a short time after the date of their deed and not long thereafter had a conversation with Mr. Lowry about the location of the boundary line between the two lots. Neither party knew where the line ran. There is undisputed evidence to the effect that Mr. Lowry pointed to an irrigation stand pipe and told the two ladies that they would start the line there and run it down the center of a space between the two rows of walnut trees to the lines of the property; that this would give both owners turning room in the space; that stakes were placed along this line and remained there for at least thirteen months; that both parties acquiesced in this and cultivated their properties up to that line for that period of time. The west end

of this agreed boundary line was 68.15 feet south of the true southwest corner of Fractional Lot 2, and 9.98 feet south of its true southeast corner so that a little more than one-half acre was added to the lot by the agreed line. Defendant was in possession up to that line when this action was filed. A chicken house was on Lot 2 but extended over onto the disputed property. During their ownership Mrs. Humphrey and Mrs. Lane built a calf or pig pen partly on Lot 2 and extending over onto the disputed property.

Defendant purchased Fractional Lot 2 from James M. Knight and Leafa M. Knight, his wife, and took title under a grant deed dated November 19, 1940. He went into possession of Fractional Lot 2 together with the part of Lot 15 between the true south boundary and the agreed boundary. His possession was not questioned until shortly before this action was filed on October 11, 1941.

Under date of September 26, 1939, Lawrence M. Lowry conveyed Lot 15 to Della B. Lowry, his wife, as her separate property. By deed dated January 19, 1940, Della B. Lowry conveyed "Fractional Lot 15 . . ." to plaintiffs F. A. Draper and Mary M. Draper, his wife. There is evidence in the record to the effect that Mr. Lowry pointed out the agreed boundary line as the north line of Lot 15 to Mr. Draper before this conveyance, although there is other evidence to the contrary.

After Mr. and Mrs. Draper went into possession they employed an engineer who located the true boundaries of Fractional Lot 2 and of Lot 15 and discovered that defendant was in possession of the northerly part of Lot 15. Plaintiffs notified defendant of that fact, and, as he refused to surrender possession, this litigation followed.

From what we have said it is clear that Mrs. Humphrey and Mrs. Lane and Mr. Lowry were uncertain as to the boundary separating their properties; that to avoid trouble between themselves, and to settle the uncertainty, they agreed on the boundary line we have already described. To that extent the finding to the effect that there was no agreement as to this boundary line is contrary to the evidence. However, there remains the question of the legal effect of this agreement and its binding force on the parties to this litigation.

There are numerous reported cases in California where the question of an agreed boundary was before the court. While

there is some divergence of opinion on some details, the main principles on which the doctrine rests are well settled.

The general rule in effect here governing cases of this kind is thus stated in *Young* v. *Blakeman*, 153 Cal. 477 [95 P. 888]:

". . . the rule has been established that when such owners, being uncertain of the true position of the boundary so described, agree upon its true location, mark it upon the ground, or build up to it, occupy on each side up to the place thus fixed and acquiesce in such location for a period equal to the statute of limitations, or under such circumstances that substantial loss would be caused by a change of its position, such line becomes, in law, the true line called for by the respective descriptions, regardless of the accuracy of the agreed location, as it may appear by subsequent measurements. . . . It is stated by the authorities that the line so agreed on becomes in legal effect the true line, that the agreement as to the line may be in parol and that it does not operate to convey title to the land which may lie between the agreed line and the true line, but that it fixes the line itself and the description carries title up to the agreed line, regardless of its accuracy; that the agreement as to the line is not in violation of the statute of frauds, because it does not transfer title; that the parties hold up to the agreed line by virtue of their original deeds and not by virtue of the parol agreement; that 'the division line when thus established, attaches itself to the deeds of the respective parties, and simply defines, not adds to, the lands described in each deed,' and that if more is thus given to one than the calls of his deed actually requires, he 'holds the excess by the same tenure that he holds the main body of his lands'." (Citing cases.)

In *Loustalot* v. *McKeel*, 157 Cal. 634 [108 P. 707], quoting from *Sneed* v. *Osborn*, 25 Cal. 619, 626, it is said: "'The better opinion is that the considerable time mentioned in the cases must at least equal the length of time prescribed by the statute of limitations to bar a right of entry.'" (Citing cases.)

The foregoing rules have been very generally followed in numerous cases of which we cite the following: *Dierssen* v. *Nelson,* 138 Cal. 394 [71 P. 456]; *Price* v. *De Reyes,* 161 Cal. 484 [119 P. 893]; *Grants Pass Land etc. Co.* v. *Brown,* 168 Cal. 456 [143 P. 754]; *Marcone* v. *Dowell,* 178 Cal. 396 [173 P. 465]; *Silva* v. *Azevedo,* 178 Cal. 495 [173 P. 929]; *Huddart* v. *McGirk,* 186 Cal. 386 [199 P. 494]; *Nusbickel* v. *Stev-*

*ens Ranch Co.,* 187 Cal. 15 [200 P. 651]; *Muchenberger* v. *City of Santa Monica,* 206 Cal. 635 [275 P. 803]; *Roberts* v. *Brae,* 5 Cal.2d 356 [54 P.2d 698]; *Cosgrave* v. *Donovan,* 52 Cal.App. 625 [199 P. 808]; *Agmar* v. *Solomon,* 87 Cal.App. 127 [261 P. 1029]; *Phelan* v. *Drescher,* 92 Cal.App. 393 [268 P. 465]; *Todd* v. *Wallace,* 25 Cal.App.2d 459 [77 P.2d 877].

As we have already pointed out the agreement between Mr. Lowry and Mrs. Humphrey and Mrs. Lane, fixing the boundary line, was entered into within two months after August 16, 1937. This action was filed on October 11, 1941. The owners of Fractional Lot 2 did not have possession of the property up to the agreed boundary line for a period equal to the statute of limitations so we must next explore the question of the sufficiency of the evidence to show a substantial loss to defendant making it inequitable to refuse to recognize the agreed boundary as the true boundary line dividing the properties.

One instance of such inequity is where the owner of one parcel points out the agreed boundary as the true boundary to a prospective purchaser who parts with the purchase price while relying on that representation, believing it to be true. (*Grants Pass Land etc. Co.* v. *Brown, supra.*) We have no such situation here. The agreement was made after the purchase of the property by Mrs. Humphrey and Mrs. Lane and no claim is made that defendant or his predecessors in interest parted with anything of value in reliance on any such boundary agreement.

Another frequent example of the enforcement of an agreed boundary contract is where the owner of one parcel erects valuable and permanent improvements on his property up to the agreed boundary without objection from the other owner. The only improvement erected on the disputed property was the calf or pig pen we have mentioned. It can hardly be classed as a valuable improvement bringing the case within this rule.

We can see nothing inequitable in requiring the parties to recognize the true boundary between their properties. The deed to Mrs. Humphrey and Mrs. Lane purported to convey "4 acres or more." There were 4.58 acres in Fractional Lot 2, so without adding to their property any part of Lot 15 lying north of the agreed boundary they received that for which they paid. The deed to defendant conveyed "Fractional Lot 2," without estimating its acreage, so the judgment

gives him exactly the land for which he bargained. There can be no inequity in this award.

We have thus far assumed that defendant was a successor in interest of Mrs. Humphrey and Mrs. Lane. The evidence does not show this to be a fact as it is silent on that question.

In the decisions already cited it is repeatedly held that a valid and enforceable contract establishing an agreed boundary line is binding on the parties and their successors in interest. We have been cited to no case holding that a party may benefit by such an agreement made by one who is a stranger to his chain of title.

From what we have said it is evident that the finding that Mr. Lowry and Mrs. Humphrey and Mrs. Lane did not agree on a line dividing their properties, thus settling an uncertainty as to the location of the true line, is contrary to the evidence. However, that fact cannot affect our decision. That agreement cannot be enforced because it did not remain unchallenged for a period equal to the statute of limitations and because it is not inequitable to disregard it. ██ A finding is immaterial where a contrary finding would not require the entry of a judgment different from the one actually rendered. (*Janke* v. *McMahon*, 21 Cal.App. 781 [133 P. 21].)

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.